369 So.2d 928 (1979)
Charles Kenneth FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 48380.
Supreme Court of Florida.
February 22, 1979.
Rehearing Denied May 10, 1979.
Louis G. Carres, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., Tallahassee, for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of murder in the first degree and a sentence of death. He was also adjudged guilty of robbery and sentenced to life imprisonment.
Anita Rogers, 20 years of age, and Gail Evans, 18 years of age, met defendant and *929 the victim, Julian Lanier, at a bar. They knew defendant, but the victim was a stranger.
The girls, after a discussion, agreed to go the the beach or somewhere else to drink and party with the men. The victim bought whiskey and cigarettes, after which the four of them left in the victim's Winnebago camper. The victim was quite intoxicated and surrendered the driving chore to Gail. The defendant and the girls had planned for Gail to have sex with the victim and make some money. Gail parked the vehicle in a deserted area and, after some conversation concerning compensation, the victim and Gail began to disrobe.
Defendant suddenly began hitting the victim and accusing him of taking advantage of his sister. Defendant then held a knife to the victim's throat and cut his neck, causing it to bleed profusely. They dragged the victim from the trailer into the bushes where they laid him face down and covered him with pine branches and leaves. They could hear the victim breathing so defendant took a knife and cut the victim's spine.
The girls and defendant then drove off in the Winnebago and found the victim's wallet underneath a mattress. The defendant and the girls split the money found in the wallet and left the vehicle parked in the parking lot of a motel.
The next morning Anita Rogers went to the Sheriff's Department and reported what had happened. She had been committed to a mental institution when she was 13 years of age and was not charged with any offense in this case.
Defendant was charged by an indictment with the offenses of first-degree murder and robbery.
The defendant testified and, during his description of the events of the evening, testified as follows:
I reckon I'll just cop out. I have done it, killed him deader than hell. I ain't going to set up here, I am under oath and I ain't going to tell no fucking lies. I will ask the Court to excuse my language. I am the one that done it. They didn't have a damn thing to do with it. It was premeditated and I intended to kill him. I would have killed him if he hadn't had no money and I know I never told you about it, but I killed him.
The jury returned verdicts finding defendant guilty of robbery, premeditated murder in the first degree, and felony murder. After the sentence hearing, the jury returned an advisory verdict unanimously recommending that defendant receive the death penalty. The court then proceeded to sentence defendant to death on the murder charge and to life imprisonment on the robbery charge.
Defendant says error was committed when the trial court excused certain prospective jurors because of their conscientious objection to the death penalty, relying upon the following principle enunciated in Witherspoon v. Illinois, 391 U.S. 510, 521-23, 88 S.Ct. 1770, 1776-7, 20 L.Ed.2d 776 (1968):
Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected.
The decisions of this Court have been in accord with the holding in the Witherspoon case, supra. See Campbell v. State, 227 So.2d 873 (Fla. 1969); Paramore v. State, 229 So.2d 855 (Fla. 1969).
A person who has beliefs which preclude him from finding a defendant guilty of an offense punishable by death is not qualified as a juror in a capital case. Section 913.13, Florida Statutes (1975).
The voir dire examination discloses that Joe C. Smith could not and would not return a verdict of guilty if the penalty might result in death. A similar situation existed as to prospective juror John Douglas Hunt. The prospective juror Deloris Swearington was not as adamant as the others, but she was challenged peremptorily and not for cause. Only two jurors were *930 challenged for cause over objections of defendant because of their beliefs against the death penalty. Similar objections were found to be without merit in Campbell v. State, supra; Williams v. State, 228 So.2d 377 (Fla. 1969); Perkins v. State, 228 So.2d 382 (Fla. 1969); Paramore v. State, supra; and Portee v. State, 253 So.2d 866 (Fla. 1971). The lower court did not commit reversible error in allowing the removal for cause of these prospective jurors. We might add that the defendant, in his testimony, made the following statements:
Well, if the judge will accept my plea of guilty and guarantee I will be electrocuted for taking this man's life, that's what I want. I got this robbery charge, you know, we didn't rob that man.
Anybody knows you can't take nobody's life and that's why I want to die for it. I mean I ain't crazy. I don't know if I got demons in me or not, but I believe I do. I went to church Sunday night to get them taken out. [Emphasis added.]
Defendant also complains that gruesome and inflammatory photographs were admitted into evidence, saying that they were unduly prejudicial. Defendant argues that there was no question as to the identity of the victim or the cause and manner of his death, so the photographs served no evidentiary purpose.
The photographs were indeed gruesome and offensive. However, they met the guidelines set by this Court in Bauldree v. State, 284 So.2d 196, 197 (Fla. 1973):
In State v. Wright, 265 So.2d 361 (Fla. 1972), we commented on and stated the proper test as follows:
"... Appellant interprets the Young case [Young v. State, 234 So.2d 341 (Fla. 1970)] as holding that `necessity' rather than `relevancy' is the test for admissibility of gruesome photographs. `Necessity' may be a consideration where, as in Young, large numbers of cumulative photographs of a gruesome nature taken away from the scene of the crime, are offered into evidence. But relevancy remains the basic test, as stated in Young: [5. Id. at 347]
`The fact that the photographs are offensive to our senses and might tend to inflame the jury is insufficient by itself to constitute reversible error, but the admission of such photographs, particularly in large numbers must have same [sic] relevancy, either independently or as corroborative of other evidence.'
"Thus, the current position of this Court is that allegedly gruesome and inflammatory photographs are admissible into evidence if relevant to any issue required to be proven in a case. Relevancy is to be determined in the normal manner, that is, without regard to any special characterization of the proffered evidence. Under this conception, the issues of `whether cumulative,' or `whether photographed away from the scene,' are routine issues basic to a determination of relevancy, and not issues arising from any `exceptional nature' of the proffered evidence."
A defendant cannot, by stipulating as to the identity of a victim and the cause of death, relieve the State of its burden of proof beyond a reasonable doubt.
One photograph was introduced during the penalty phase of the proceeding to show that the death blow was delivered with such tremendous impact that it went through the victim's spinal column and severed the victim's spinal cord. This was evidence of the atrocious manner in which the victim was murdered and the deliberate, coldblooded intent of the defendant.
Defendant contends that the death penalty statute is unconstitutional. He recognizes that the statute was upheld in State v. Dixon, 283 So.2d 1 (Fla. 1973), and Alford v. State, 307 So.2d 433 (Fla. 1975), but requests that we reexamine our prior decision. He argues that the statute does not meet constitutional muster because of the discretion of the state attorney in making the charge, as well as the discretion of the state attorney to plea bargain. He also refers to the discretion of the jury to convict a defendant of a homicide less than capital and thereby spare defendant's life. He also refers to the discretion involved in *931 grants of executive clemency. All of these objections have been considered by this Court, as well as the Supreme Court of the United States. The Florida death penalty statute is constitutional. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
At the sentence hearing the defendant produced Dr. John F. Mason, a psychiatrist, who testified as to the mental and emotional condition of the defendant. The defendant also produced his former wife who testified concerning the mental and emotional instability of the defendant. The jury recommended that the death sentence be imposed. The trial judge found that the murder was committed while defendant was engaged in the commission of a robbery and that the capital felony was especially heinous and atrocious. He found that sufficient aggravating circumstances existed as enumerated in Section 921.141(5), Florida Statutes (1975), that justified a sentence of death. He found that there were no mitigating circumstances to outweigh the aggravating circumstances. There was no presentence report filed in the case or considered by the trial judge.
Defendant contends that the felony was committed while the defendant was under the influence of extreme mental or emotional disturbance and the trial court did not consider this mitigating factor. The following instruction was given to the jury before they deliberated upon the penalty:
If one or more aggravating circumstances are established you should consider all the evidence tending to establish one or more mitigating circumstance and give that evidence such weight as you feel it should receive in reaching your conclusions as to the sentence which should be imposed.
Before imposing the death sentence, the trial judge considered three psychiatric reports (with which defendant's attorney was familiar) and found that there were no mitigating circumstances sufficient to overcome the heinous nature of the homicide. The defendant committed the homicide in an effort to fulfill his intentions and complete his desire, i.e., "ripping the victim off." An elderly gentleman had agreed to go out and have some fun, but the price of such activity was his life. Defendant showed no compassion when he cut the victim's throat, beat him, dragged him into the woods, and cut his spine with a knife. As described by one witness, there was no air coming from the body of the victim after she heard "the cracking" of the spine.
The aggravating circumstances were proved beyond a reasonable doubt. As stated in State v. Dixon, 283 So.2d at 9,
When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances provided in Fla. Stat. § 921.141(7), F.S.A. All evidence of mitigating circumstances may be considered by the judge or jury.
In Sullivan v. State, 303 So.2d 632 (Fla. 1974), the sentence of death was appropriate where defendant and an accomplice conducted an assistant manager of a restaurant to a swampy area, fully intending to murder such victim, and where the 25-year-old defendant with no prior criminal record shot the victim with both barrels of a shotgun in the back of the head.
The death sentence was appropriate when a murder was committed while the defendant was engaged in the burglary of the deceased's home. This murder was found to be especially heinous, atrocious, and cruel, and the jury recommended the death penalty. The defendant had been previously convicted of burglary (this differs from defendant Foster), but the atrocious nature of the crime coupled with the burglary were other aggravating circumstances sufficient to warrant the death penalty. Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
Where defendant had a lengthy history of violence (just as defendant Foster), had demonstrated callous indifference to human life, and where his acts were for pecuniary gain, the death penalty was properly imposed. Henry v. State, 328 So.2d 430 (Fla. 1976).
Although the findings of the trial judge in the case sub judice were not expansive, *932 the justification of his sentence of death in writing was sufficient to show that the sentence of death resulted from reasoned judgment. This reasoned judgment comports with our consideration of other cases and the sentence of death was appropriate under the circumstances.
Other questions raised by defendant have been considered and are without merit.
The judgments and sentences of the trial court are affirmed.
It is so ordered.
ENGLAND, C.J., and BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.