381 So.2d 683 (1979)
Jessie Lamar HALL, Appellant,
v.
STATE of Florida, Appellee.
Nos. 49566, 49567 and 51777.
Supreme Court of Florida.
Order For Clarification September 21, 1978.
December 20, 1979.
Rehearing Denied March 28, 1980.
*684 Allen P. Allweiss, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., and Carolyn M. Snurkowski and Charles W. Musgrove, Asst. Attys. Gen., Tallahassee, for appellee.
Per Curiam December 20, 1979.

ORDER FOR CLARIFICATION
This cause is before us on direct appeals from two judgments of guilty of murder in the first degree, a judgment of guilty for involuntary sexual battery, and sentences of death and life imprisonment, respectively, imposed upon the judgments. In reviewing the findings of fact supporting the death sentences, it appears that the trial judge considered all of the mitigating and aggravating circumstances enumerated in Section 921.141, Florida Statutes (1975). However, in light of the trial judge's following statement:
Not only does the Court find aggravating circumstances in that the capital felonies were committed while the defendant was engaged, or was an accomplice, in the commission of a rape, but further finds that the capital felonies were especially heinous, atrocious and cruel, and finds that there are insufficient mitigating circumstances as enumerated in Section 921.141, Florida Statutes, to outweigh the aforesaid aggravating circumstances....
a more detailed statement of findings of fact delineating the aggravating and mitigating circumstances found to exist is required. This additional information is necessary to enable this Court to properly review the death sentence in accordance with our pronouncement in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), that:
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ....
Accordingly, the trial court is directed to submit an amended, more explicit, written findings of fact to this Court within twenty (20) days from the date of this order. In that the record on appeal in this cause will be supplemented by such amended written findings of fact, appellant is hereby granted leave to file a supplemental brief within twenty (20) days from the date the amended findings of fact are filed. In the event a supplemental brief is filed by appellant, appellee is hereby allowed ten (10) days from the date such supplemental brief is filed within which to file a brief in response thereto. Any such brief as may be filed shall be limited to the matters or issues presented by the amended findings of fact.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.

OPINION ON THE MERITS
PER CURIAM.
This is a direct appeal from two judgments of the Circuit Court for Orange *685 County, Florida, of guilty of murder in the first degree and sentences of death, following jury recommendations of life imprisonment. Appellant was also adjudged guilty of involuntary sexual battery and sentenced to life imprisonment for that offense. Our jurisdiction is predicated upon article V, section 3(b)(1), Florida Constitution.
While walking along Dunedin Beach on August 27, 1975, Thomas I. Mills discovered the bodies of David Sawyer and Susan Rhoutt. Both victims had been shot three times in the head. Mills contacted police officers who discovered expended .25 caliber WW casings near the bodies. Lab tests determined that the bullets had been fired from a semiautomatic weapon. An autopsy revealed that Susan Rhoutt had engaged in sexual intercourse up to twelve hours prior to her death. In addition, a high acid phosphatase level in her anal tract was found along with type A, B and O blood groupings which evidenced sexual activity. The pubic area of both victims was combed, and hairs were recovered from Susan Rhoutt's blouse.
On September 5, 1975, Deputy Warden contacted appellant at a local bar and requested that he proceed to the Dunedin Beach police station for questioning. Pursuant to a radio message from Warden, Sgt. McKenna asked appellant to wait in his office until Warden's arrival, which occurred fifteen to twenty-five minutes later. The officer offered appellant a cup of coffee but did not question him, warn him of his Miranda rights, or place him under arrest. In response to appellant's question as to why he had been called, Sgt. McKenna stated that "It would be best he waited for Warden and Warden would explain it to him." Appellant then stated with respect to Darrell Hoy, appellant's companion the night of the murder, "Did he say I did that to those kids? ... If Darrell said that I did that to those kids, he's crazy. You would have to be crazy to do a thing like that."
Subsequent to Deputy Warden's arrival, appellant was advised of his Miranda rights and voluntarily spoke to the officers. Appellant also executed a written waiver permitting extraction of head and pubic hair samples. Police officers informed appellant that these samples were sought for comparison with samples obtained from the murder victims. Hair samples were also obtained from Darrell Hoy. A consent search of appellant's house was conducted, but no evidence was discovered. The hair analysis revealed that a pubic hair found on Susan Rhoutt matched that of Darrell Hoy and hairs recovered from Susan's blouse matched those of the appellant.
On September 7, 1975, appellant was arrested for first degree murder. On September 26, 1975, appellant was indicted on two counts of first degree murder and for involuntary sexual battery. During appellant's incarceration pending trial, a search warrant was obtained and appellant's residence was again searched. The second search revealed several .25 caliber WW shells in a can.
At trial, a prosecution witness testified that appellant argued with David Sawyer over Susan Rhoutt the night before the murders. Appellant and Hoy visited a friend's house the evening of the murder and, as they left the residence, appellant suggested to Hoy that they go to the beach. Another witness for the state testified that (1) approximately fifteen months prior to the murders, he observed appellant carrying a .25 caliber automatic in his boot and using WW ammunition similar to the death bullets; (2) he saw similar bullets in appellant's home and the can in which they had been stored within one month prior to the murders; and (3) a week before the crimes he observed a gun on the floor of Hoy's car which Hoy kicked under appellant's seat.
Darrell Hoy, called as a court's witness, stated that he and appellant did not go to the beach on the evening of the murders. The state sought to impeach Hoy with contradictory statements given while in jail which implicated appellant in the killings. Hoy acknowledged the statements but stated that they were wrong. Thereafter, Hoy invoked the fifth amendment, thereby precluding cross-examination by defense counsel. Hoy was then dismissed from the witness stand.
*686 Appellant testified in his behalf, stating that (1) he had not argued with David Sawyer; (2) he was not acquainted with Susan Rhoutt; (3) he neither suggested going to the beach nor arranged such an excursion on the evening of the murders; and (4) he neither possessed nor used a .25 caliber weapon or ammunition.
The jury returned verdicts of guilty on the two counts of first degree murder and on the count of involuntary sexual battery, and recommended life imprisonment. The trial judge, however, imposed the penalty of death as to each count of murder and life imprisonment with respect to the conviction for involuntary sexual battery.
The trial judge's findings of fact did not delineate in detail each aggravating and mitigating circumstance which he found to exist. Consequently, prior to hearing oral argument in this cause, this Court entered an order of clarification directing the trial judge to submit a more detailed statement of findings of fact to enable us to properly review the sentences of death in accordance with our pronouncements in Tedder v. State, 322 So.2d 908 (Fla. 1975). We have received a response to this order from the trial judge and find it satisfactory.
Appellant argues initially that the attempted impeachment of Darrell Hoy with prior statements implicating appellant in the slayings, followed by Hoy's invocation of his fifth amendment privilege, denied appellant his right to confrontation as recognized in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). For the following reasons we agree with appellant's contention and reverse his convictions.
At the time of appellant's trial his accomplice, Darrell Hoy, had been convicted of charges stemming from his participation in the rape and killings and was awaiting sentencing.[1] Hoy was placed on the witness stand at appellant's trial as the court's witness. In response to questioning by the prosecutor, Hoy denied that he and appellant had gone to Dunedin Beach on the night of the slayings. The prosecutor then sought to impeach Hoy with prior inconsistent statements made to a detective which implicated appellant in the slayings:
Q Let me read to you a question and an answer that you made.
"Question. You went to the beach. About what time did you go there?"
This again was your attorney asking you the question.
"Answer. I don't know because I don't have a watch."
Do you remember making that statement?
A I don't know, sir.
Q "Question. Okay. How long did you stay at the beach?"
And your answer, "Maybe five, ten minutes."
A I don't know what you're talking about because I never went to the beach, sir.
THE COURT: The question that Mr. Fugate is asking you, Mr. Hoy, is whether or not you did or did not have those questions asked of you and whether you did or did not give those answers.
THE WITNESS: Yes, the questions were asked.
THE COURT: And did you give those answers?
THE WITNESS: Yes, sir. I was mistaken on those answers, though.
THE COURT: All right.
BY MR. FUGATE:
Q You say that you were mistaken in giving those answers?

*687 A Yes, sir, I was in jail over there for several months, and I wasn't thinking too good then.
Q Let me ask you then have you ever told anyone  and think carefully about this, Darrel. Have you ever told anyone that you were present when Jesse Lamar Hall shot David Sawyer?
A No, sir, I don't know about that, sir, because I 
MR. FOREMAN: (Interposing) Objection.
THE COURT: The objection is sustained.
TR volume V, 815-16.
The attempted impeachment by the prosecutor continued:
BY MR. FUGATE:
Q Would you look at this again? Is this your signature, Darrel?
A Yes, sir, it is.
Q Let me, if I might, stand here, Your Honor.
On page 4 there's a question. Let me ask you if you remember this question by Detective Bender:
"Okay. Were you holding onto Susan [Rhoutt] loosely, medium or tight?"
And you gave the answer, "I was holding on her tight until she got away. He'd shoot me."
And then you came along and  is this your handwriting here, "Jesse said if I let Susan get away he would shoot me."

MR. FOREMAN: Objection, Your Honor.
THE COURT: Sustained.
BY MR. FUGATE:
Q Do you remember making that statement to that question, "Were you holding onto Susan loosely, medium or tight?"
A I don't know what you're talking about, sir.
Q Let me ask you, if I may  do you see this "DEH" here?
A Yes, I see it.
MR. FOREMAN: Objection. We have a motion for the Court at this time.
THE COURT: I'll hear it later. Go ahead.
BY MR. FUGATE:
Q Do you see this handwriting here without saying what the handwriting is?
A I don't wish to answer that question at the moment.
.....
BY MR. FUGATE:
Q Darrel, you've indicated that with reference to what's been marked as State's Exhibit for Identification No. 42, you recognized the statement and you recognized your signature on it; is that correct?
A I take the Fifth Amendment on that. I don't have to answer that question.
TR volume V, 825-27 (emphasis supplied). At that point Hoy was dismissed from the witness stand without an opportunity for questioning by defense counsel. The jury was instructed that the prior statements could be used solely for impeachment of Hoy, not as evidence of appellant's guilt.
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the United States Supreme Court reversed the conviction of an individual when the confession of his codefendant which implicated them both was admitted in their joint trial. Because the confession was admitted without the codefendant taking the stand, the defendant was denied his right to confront witnesses against him.
The fact that the defendants here were tried separately rather than jointly does not vitiate the constitutional infirmity. The crux of a Bruton violation is the introduction of statements which incriminate an accused without affording him an opportunity to cross-examine the declarant. It is immaterial whether denial of this opportunity occurs because the statements are introduced through the testimony of a third party or because the speaker takes the stand and refuses to answer questions concerning the statements. This proposition follows from an examination of the Supreme *688 Court's decision in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the facts of which are similar to those of the case at bar. The Douglas decision was referred to at length by the Bruton majority:
[T]wo persons, Loyd and Douglas, accused of assault with intent to murder, were tried separately. Loyd was tried first and found guilty. At Douglas' trial the State called Loyd as a witness against him. An appeal was pending from Loyd's conviction and Loyd invoked the privilege against self-incrimination and refused to answer any questions. The prosecution was permitted to treat Loyd as a hostile witness. Under the guise of refreshing Loyd's recollection the prosecutor questioned Loyd by asking him to confirm or deny statements read by the prosecutor from a document purported to be Loyd's confession. These statements inculpated Douglas in the crime. We held that Douglas' inability to cross-examine Loyd denied Douglas "the right of cross-examination secured by the Confrontation Clause." 380 U.S., at 419, 85 S.Ct. 1074 at 1077. We noted that "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer." Id., at 420, 85 S.Ct. 1074 at 1077... . In Douglas we said, "Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true."
391 U.S. at 126-27, 88 S.Ct. at 1623.
Appellee suggests that Bruton and Douglas are distinguishable because in this case Hoy denied having made the statements which implicated appellant. Rather, posits appellee, this case is controlled by Baker v. State, 217 So.2d 880 (Fla. 1st DCA 1969), where the District Court of Appeal, First District, opined:
The codefendant, by taking the witness stand and denying ever having made the oral confession testified to by the police officers [which implicated the defendant in the crime], removed any valid objection by appellant to the admission of the confession, and absolved the court from any error in its ruling thereon.
Id. at 885.
On review of Baker's conviction by federal habeas corpus[2] the Fifth Circuit Court of Appeals agreed with the conclusion of the district court and noted "[T]he most skillful cross-examiner could not have produced a better result for Baker than Damron's testimony that his entire confession had never been made and that neither he nor Baker robbed Infinger."[3] An examination of the remainder of the fifth circuit's opinion, however, evidences that its conclusion was not predicated upon the codefendant's denial of his prior statements. Rather, no violation of the Bruton rule obtained because the codefendant was subject to cross-examination by the defendant:
As the Florida Court of Appeals held, Baker was not denied the right to be confronted with any witness against him. In James v. United States, 416 F.2d 467 (5th Cir.1969) this court upheld the conviction of a non-confessing joint defendant over a Bruton objection in a joint trial where the confessing defendant took the stand and was subject to cross-examination... . Baker's right under the Sixth Amendment to be confronted with the witnesses against him was in no way denied in the case at bar because Damron took the stand and made himself subject to cross-examination by Baker.
Baker v. Wainwright, 422 F.2d 145, 147-48 (5th Cir.1970).
*689 The policy reason for this holding is apparent. The codefendant's bare denial of prior statements which implicate both him and the defendant could be interpreted as an attempt by that witness to "save himself." Consequently, the jury might believe that the prior statements were in fact true. If the defendant has an opportunity to cross-examine the codefendant he may be able to develop facts which will convince the trier of fact that the prior statements were false. Where, as here, the codefendant's invocation of his fifth amendment privilege precludes such questioning by the defendant, the principles of Bruton and Douglas have been violated.[4]Accord, Hill v. State, 330 So.2d 487 (Fla. 4th DCA 1976).
Appellee argues that no reversible error occurred because the jury was instructed that the prior statements could only be used to impeach Hoy, not as evidence of appellant's guilt. Both Douglas and Bruton rejected such a suggestion, relying in part upon the dissent of Mr. Justice Frankfurter in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957):
That dissent challenged the basic premise of Delli Paoli that a properly instructed jury would ignore the confessor's inculpation of the nonconfessor in determining the latter's guilt. "The fact of the matter is that too often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors. The admonition therefore becomes a futile collocation of words and fails of its purpose as a legal protection to defendants against whom such a declaration should not tell." 352 U.S., at 247, 77 S.Ct. 294, at 302. The dissent went on to say, ... "The Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." Id., at 248, 77 S.Ct. 294, at 303. To the same effect, ... is the statement of Mr. Justice Jackson in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790: "The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction. * * *"
Bruton v. United States, 391 U.S. at 129, 88 S.Ct. at 1624.
Appellant raises a multitude of other issues relating to the validity of his convictions. Most of the issues are relevant solely within the context of the trial proceedings here under review (e.g., the propriety of jury instructions to which defense counsel did not object, cross-examination of appellant as to the specifics of prior convictions where timely objection was not made, etc.) Because it is uncertain whether these issues would recur in a retrial of appellant, should one take place,[5] we will not address these arguments. There are, however, three points relating to the admissibility against appellant of certain evidence which will necessarily be relevant in the event that he is retried: (1) whether the trial judge properly denied appellant's motion to suppress the .25 caliber ammunition seized from appellant's residence and his statement made at the Dunedin police station; (2) whether certain head hairs removed from the clothing of Susan Rhoutt which matched the hair samples procured from appellant were relevant to prove appellant's guilt; and (3) whether hairs found on Susan Rhoutt which matched those of appellant's alleged accomplice, Darrell Hoy, were relevant to establish appellant's guilt. To aid in the conduct of any retrial we will address these matters. For the following reasons we conclude that each item of evidence and the statement was properly admitted.
*690 Appellant initially argues that he was not shown to have been in possession of the ammunition seized from his residence. Therefore, this evidence which was similar to the murder bullets was inadmissible against appellant. While appellant shared the dwelling with his wife, it is clear that he need not have exclusive possession of premises in which the incriminating evidence was found in order to be charged with its possession. See Smith v. State, 279 So.2d 27 (Fla. 1973); Joiner v. State, 339 So.2d 296 (Fla. 1st DCA 1976); Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967).
Further, appellant maintains that the following statement made at the Dunedin police department is not relevant to prove his guilt of the killings: "Did he [Darrell Hoy] say I did that to those kids? ... If Darrell said that I did that to those kids he's crazy. You would have to be crazy to do a thing like that."[6] It is argued that it cannot be inferred from this statement that the appellant possessed unique knowledge of the details of the murders. This is so because the deaths were widely publicized for ten days prior to the time appellant made this remark. We reject appellant's contention because it reaches the weight, not the admissibility, of the evidence. The jury could reasonably conclude that this statement was evidence of guilty knowledge of appellant. Parrish v. State, 90 Fla. 25, 105 So. 130 (1925); Darty v. State, 161 So.2d 864 (Fla.2d DCA 1964), cert. denied, 168 So.2d 147 (Fla. 1964). The fact that the jury might properly make a contrary determination does not negate the relevance of this evidence to prove appellant's guilt. Results of the comparison between appellant's hair and the hairs removed from the clothing of Susan Rhoutt are likewise relevant and admissible as evidence of the guilt of the accused.
Finally, results of the comparison between the hair of Darrell Hoy and specimens discovered on the body of Susan Rhoutt are relevant with respect to the guilt of appellant. Because evidence that Hoy and appellant were together on the night of the murders was introduced at trial, evidence that Hoy's hair was found in the hair of the victim implicates appellant as well as Hoy.
Due to our reversal of appellant's conviction, it is unnecessary for us to determine whether the sentence of death imposed comports with our pronouncements in Tedder v. State, 322 So.2d 908. In the event that appellant is again tried, convicted and sentenced to death, a full review by this Court of the relevant sentence will then be proper.
For the foregoing reasons the judgments and sentences of the Circuit Court for Orange County, Florida, are reversed and this cause is remanded to that tribunal for proceedings not inconsistent with this opinion.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
NOTES
[1] Darrell Hoy was tried separately from appellant. Hoy was convicted of two charges of murder in the first degree, and of involuntary sexual battery and petit larceny for his complicity in the slayings. Following return of the jury's recommendation of life imprisonment for the charges of murder in the first degree, the trial judge imposed sentences of death as to each charge. On appeal we affirmed the judgments and concluded that the principles of Tedder v. State, 322 So.2d 908 (Fla. 1975), had not been violated by imposition of the sentences of death despite the jury's recommendations to the contrary. Hoy v. State, 353 So.2d 826 (Fla. 1977).
[2] Baker v. Wainwright, 422 F.2d 145 (5th Cir.1970).
[3] Id. at 148 (footnote omitted).
[4] The issue is not whether the codefendant has the right to invoke the privilege against self-incrimination; it is sufficient if he in fact claims it. Hankerson v. State, 347 So.2d 744 (Fla. 4th DCA 1977).
[5] In that our reversal is not grounded upon insufficiency of evidence to support the findings of guilt, the double jeopardy clause of the fifth amendment does not preclude a retrial if the state so elects. See Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1977).
[6] Appellant does not assert that a Miranda violation occurred in connection with the making of this statement.