Charles Kenneth FOSTER, Petitioner,

v.

Charles G. STRICKLAND, Jr., et al., Respondents.

No. 81–5734.

United States Court of Appeals, Eleventh Circuit.

June 27, 1983.

As Amended on Denial of Rehearing En Banc Nov. 3, 1983.

Steven L. Seliger, Tallahassee, Fla., Richard H. Burr, III, West Palm Beach, Fla., for petitioner.

Gregory C. Smith, Asst. Atty. Gen., Tallahassee, Fla., for respondents.

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Charles Kenneth Foster appeals from the district court's denial of his petition for a writ of habeas corpus. Petitioner was convicted of first degree murder in Florida and sentenced to death. In this collateral appeal, he challenges: (1) the competency of his counsel in the guilt and penalty phases of his trial; (2) the constitutionality of instructions to the jury on the weighing of aggravating against mitigating circumstances; (3) the Florida Supreme Court's alleged use of non-record material in reviewing his sentence; and (4) the constitutionality of jury instructions allegedly limiting consideration of non-statutory mitigating circumstances.

After a careful review of the entire record, including petitioner's state trial transcript and the transcript of his federal habeas evidentiary hearing, we affirm the district court's decision with respect to these claims. We are compelled, however, to re-

verse because of the trial judge's inadequate findings of fact on the mitigating circumstances, as required by the Florida Death Penalty statute. It is impossible to determine whether petitioner's sentence was the product of reasoned judgment rather than of caprice and arbitrariness, and thus whether it comports with the constitutional requirements expressed by the Supreme Court. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

## I. BACKGROUND

Petitioner was convicted of first degree murder and robbery for the July 15, 1975, killing of Julian Lanier. Petitioner apparently met Lanier for the first time at a bar on the evening of July 14, where they became acquainted over several drinks. Lanier asked petitioner if he knew of any women they could hire to engage in sexual relations. Petitioner and Lanier then traveled to another bar where they met two women, at least one of whom knew petitioner, and persuaded them to travel to a remote wooded area in Lanier's motorhome. Both petitioner and Lanier were, apparently, quite intoxicated.

In the early morning hours of July 15, just as Lanier and one of the women were about to engage in sexual intercourse, petitioner, without provocation, screamed that Lanier was taking advantage of his sister and brutally attacked Lanier with his fists. Petitioner then slit Lanier's throat with a knife. With the assistance of the two frightened women, petitioner dragged Lanier out of the motorhome to the woods and covered him, face down, with sticks and leaves. Hearing him breathing, petitioner, with one slice, severed Lanier's spinal cord at the base of his neck. Petitioner and the two women returned to the motorhome, where they allegedly then found Lanier's wallet and divided the money it contained.

Police, acting on information provided by the women, arrested petitioner on the day of the murder. Five days later petitioner gave the police a detailed confession of the crime. His subsequent motion to suppress the confession was denied. Petitioner's appointed counsel then filed a suggestion of insanity, and three court appointed psychiatrists examined petitioner. Two of these psychiatrists had treated petitioner extensively before for emotional disturbances. All three determined that petitioner was competent to stand trial and that he was likely sane when he committed the crime. The court adopted the psychiatrists' conclusions.

Petitioner was found guilty by a jury on October 3, 1975, of murder in the first degree, Fla.Stat.Ann. 782.04(1) (West Supp. 1982), and of robbery. During the trial, Foster made a dramatic witness stand confession. The jury recommended the death penalty. Judge Spear sentenced petitioner to death on the murder charge and life imprisonment on the robbery charge. Petitioner's motion for a new trial was denied. The Florida Supreme Court, in an automatic appeal mandated by Florida's death penalty statute, affirmed petitioner's conviction and sentence. *Foster v. State,* 369 So.2d 928 (Fla.1979). A motion for rehearing was denied, as was a petition for certiorari to the United States Supreme Court. 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 1116 (1979).

On May 5, 1981, the Governor of Florida signed ٪ death warrant ordering petitioner's execution on June 3, 1981. The Florida Circuit Court denied petitioner's application for a stay of execution and motion for post-conviction relief on May 15, 1981. The Florida Supreme Court affirmed this decision on May 28, 1981. 400 So.2d 1 (Fla. 1981).

The United States District Court for the Northern District of Florida granted a stay of execution when petitioner sought habeas relief from the district court. 515 F.Supp. 22 (N.D.Fla.1981). After a two day evidentiary hearing, the district court denied the petition for a writ. 517 F.Supp. 597 (N.D. Fla.1981). Petitioner appealed to this Court. After hearing oral argument in the

case, we deferred consideration until this Court issued its *en banc* decision in *Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983), because that decision addresses several issues which we face here. We now proceed to a consideration of each of petitioner's claims.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Fourteenth Judicial Circuit Public Defender Virgil Mayo assumed representation of Foster's case from an assistant about a month before the trial. Mayo has been a member of the Florida Bar since 1951. He has represented defendants at numerous criminal trials, having held the public defender's position since 1963. His experience with capital cases under the recently amended death penalty statute was limited, as was every other attorney's at the time, although Mayo had tried cases under the old statute before it was invalidated by the Supreme Court's decision in *Furman v. Georgia.* Mayo was assisted in the defense by Bill Wagers, a new assistant public defender, whom the district court noted was a highly competent criminal defense lawyer.

Foster asserts that his trial counsel rendered ineffective assistance at both the guilt and penalty phases. We turn to these contentions.

### A. *Guilt Phase*

Petitioner alleges that his counsel failed to provide adequate representation during the guilt phase of his trial. He cites numerous instances of this alleged inadequacy, the most significant of which are that: (1) Mayo failed to inform the examining psy-

chiatrist and the court of Foster's "irrational behavior" exhibited at pre-trial conferences; (2) Mayo failed to challenge the psychiatrists' reports on competency by interviewing the psychiatrists and requesting a competency hearing rather than merely submitting the competency issue on the basis of the reports; [1] (3) Mayo failed to raise effectively the competency issue after the confession and after he discovered Foster's use of Valium during the trial; and (4) Mayo failed to investigate and present an insanity defense.

■ In evaluating petitioner's claim, we note that he was not entitled to, "errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *modified,* 289 F.2d 928 (5th Cir.), *cert. denied* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). In order to establish a claim of constitutionally deficient representation that may be redressed in a habeas *action,* petitioner must not only show ineffective assistance, he must also "demonstrate that the ineffective assistance created not only 'a *possibility* of prejudice but that [it] worked to his *actual and substantial disadvantage.*'" *Washington v. Strickland,* 693 F.2d 1243, 1258 (5th Cir.1982) (Unit B, *en banc*), *quoting United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982) (emphasis in original).

■ It is clear from the record that defense counsel performed his duties competently and conscientiously.[2] Mayo did not

1. We restrict our consideration here to whether Mayo was ineffective and do not address the issue of whether Foster was indeed incompetent because that issue has not been raised properly before this Court.

2. We reach this conclusion after conducting an independent analysis of the facts of this case, as this Court has required:

    Whether counsel has rendered effective assistance is a mixed question of law and fact which requires the appellate court to independently apply legal principles to the district court's findings of basic common historical facts of the case. *Young v. Zant,* 677

F.2d 792, 798. Thus, while we must defer to the district court's finding as to what counsel did or did not do, absent a clearly erroneous determination, we independently evaluate whether counsel's representation satisfied the standards of the Sixth and Fourteenth Amendments.

*Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982). *See Washington v. Watkins,* 655 F.2d 1346, 1351–56 (5th Cir.1981).

The final result of our analysis would not differ if we regarded the district court's finding of effective assistance as a question of fact entitled to a presumption of correctness that is reversible only if "clearly erroneous," as argu-

fail to discover information that was necessary for the competent defense of Foster. The district court did not clearly err, based upon our review of the record, in finding that Mayo interviewed Foster's mother and that he studied all the relevant medical records, including the psychiatric reports of Foster's medical records at the hospitals and clinic where his emotional disturbances were treated. Mayo investigated adequately the competency issue.

Three psychiatrists examined Foster at the court's request, two of whom, Dr. Mason and Dr. Sapoznikoff, had treated him extensively for prior episodes of emotional disturbance. The unanimity of the three professionals that Foster was competent to stand trial and legally sane at the time of the crime weighs heavily against the suggestion that Mayo, by requesting a hearing, somehow could have altered the outcome of the competency determination. Moreover, it does not appear that Mayo possessed any unique information that would have contributed measurably to the doctors' or the court's competency determinations. While Mayo's testimony indicates he had serious doubts about Foster's psychiatric health, the testimony does not demonstrate that Mayo believed Foster was *legally* incompetent to stand trial in Florida.

Nor did Mayo act inappropriately following Foster's in-court confession. Mayo promptly raised the competency issue after the confession by moving for a continuance and additional psychiatric examinations. The denial of this motion should not reflect upon Mayo's effectiveness in raising this issue. Nor is it apparent that Mayo should have challenged Foster's competency to stand trial when he later learned that petitioner was taking Valium during the trial. The record fails to indicate that the district court erred in finding that Foster did not sleep through much of his trial and that, in light of Foster's extensive history of prescription and nonprescription drug use, a dosage of 10 milligrams three times per day of a mild sedative had an insignificant effect on Foster's ability to appreciate the surrounding events.

■ Petitioner also alleges that Mayo failed to investigate and present an insanity defense. The facts as found by the district court indicate that Mayo had no choice but to refrain from doing so. Mayo apparently favored presenting a second degree murder defense based upon a "depraved mind." Mayo felt he could "sell" such a defense to the jury, based upon Foster's unpredictable and disturbed past and the fact that the victim was drunk and engaging a prostitute at the time of the murder. Over the course of several pre-trial conferences, Mayo also explored with petitioner the consequences of pleading not guilty by reason of insanity. Foster rejected both of these defense strategies and insisted that he pin the blame on the two women present at the murder and attribute his inaction at the time of the killing to one of his infrequent epileptic fits. In light of Foster's adamance, Mayo had an ethical obligation to comply with his client's wishes and was thus unable to present an insanity defense.[3] Petitioner, who preempted his attorney's strategy choice, cannot

ably suggested by the Supreme Court's analysis in *Pullman Standard v. Swift*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

**3.** Ethical Consideration 7–7 of the American Bar Association Code of Professional Responsibility provides:

In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, are binding on his lawyer.... A defense lawyer

in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken. Ethical Consideration 7–8 provides, in pertinent part:

In the final analysis, however, the lawyer should always remember that the decision to forego legally available objectives and methods because of non-legal factors is ultimately for the client and not for himself.

now claim as erroneous the very defense he demanded Mayo present.[4]

### B. Sentencing Phase

Petitioner contends that Mayo failed to utilize properly his expert witness, Dr. Mason, to convey the impact of Foster's mental illness upon Foster's ability to appreciate the criminality of his conduct. Petitioner also urges that Mayo was ineffective because he failed to present testimony by friends and family of Foster's "crazy behavior." Thus, petitioner claims, the jury and the judge did not have before them crucial evidence supporting several mitigating circumstances.[5]

Mayo put Foster's ex-wife and Dr. Mason, the psychiatrist, on the stand during the sentencing phase. Foster's ex-wife testified to Foster's disturbed emotional state and Dr. Mason bolstered her testimony with medical corroboration of Foster's illness. Also, Mayo introduced certain medical records into evidence, so that the jury had, during its deliberations, written evidence of Foster's emotional health.[6] In addition, the judge should have considered the pre-trial competency reports as part of the material adduced to support the existence of mitigating factors.

■ Mayo's assessment of the Bay County, Florida, jury as more likely to respond to an appeal to emotion than to complicated medical proof, and his consequent presentation of the mitigating evidence in this manner, does not rise to the level of constitutionally ineffective assistance of counsel. The evidence Mayo in fact presented covered essentially the same subjects as that which petitioner would now have him present. Mayo's choice to present mitigating evidence in the manner he did was a strategic decision informed by years of criminal practice in the region. Mayo's assistance in this regard was not ineffective, nor did it work to petitioner's actual and substantial disadvantage. *Washington v. Strickland,* 693 F.2d at 1260.[7]

---

**4.** Mayo wisely made clear on the record his inability to convince Foster to proceed by what Mayo regarded as the best defense, by examining Foster out of the jury's presence immediately when Foster took the stand, as follows:

By Mr. Mayo:
Q. Your name is Charles Kenneth Foster?
A. Yes sir.
Q. Are you commonly called Kenny?
A. Yes sir.
Q. Kenny we are out of the presence of the jury and I have discussed this aspect with you, is that correct?
A. Yes sir.
Q. Prior to this time have you been advised that the three psychiatrists and the court has (sic) ruled that you are presently competent to stand trial and that you are competent to aid in the preparation of your defense?
A. Yes sir.
Q. Is it true that both counsel that are present in the court have discussed many times with you your various defenses?
A. Yes sir.
Q. And did we also discuss with you the possibility of the defense of insanity at the time of the crime, not presently, but at the time of the crime?
A. Yes sir.
Q. Did you direct us to prepare a defense other than that?
A. Yes, I did.

Q. Did we also discuss with you the possibility of a defense in which we would attempt to reduce the degree of the offense to second degree?
A. Yes sir.
Q. Did you advise your counsel to prepare a defense other than that?
A. Yes, I did.

Thus, Mayo clearly distanced himself from the theory by which he was compelled to conduct Foster's defense.

**5.** Included among the mitigating circumstances the jury should have considered were whether: "The capital felony was committed while the defendant was under the influence of extreme mental or emotional stress." Fla.Stat.Ann. § 921.141(6)(b) (West Supp.1982); and "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." Fla.Stat.Ann. § 921.-141(6)(f) (West Supp.1982).

**6.** Mayo had prepared the jury during *voir dire* for the receipt of evidence of Foster's emotional illness by emphasizing how this information could justify a finding of "mercy."

**7.** In assessing whether counsel has provided ·effective assistance in the face of an allegation that he or she failed to investigate or present a particular line of defense, this Court has noted that:

## III. WEIGHT OF AGGRAVATING VS. MITIGATING CIRCUMSTANCES

Petitioner alleges that the failure of the court to instruct the jury that any aggravating circumstances must outweigh the mitigating circumstances "beyond a reasonable doubt" for the jury to suggest the death penalty is a denial of due process. Petitioner reasons that the conclusion that aggravating circumstances outweigh any mitigating circumstances is a fact "necessary to constitute the crime of" capital murder and therefore is subject to the due process requirement of *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), and its progeny of proof beyond a reasonable doubt.

■ This Court recently held that, under the Florida bifurcated death penalty trial which provides for guilt and penalty phases, the Florida sentencing determination is a separate proceeding dealing with facts that are not elements of the crime itself. *Ford v. Strickland*, 696 F.2d 804 at 817–19. Thus, a finding that the aggravating circumstances outweigh mitigating circumstances is not subject to the due process requirements of *In Re Winship*. The *Ford* court noted that the petitioner in that case seriously confused the proof of facts and the weighing of facts in sentencing. The court determined that the weighing process, "is not a fact susceptible of proof under any standard...." *Id.*, at 818. The holding of the *Ford* court in this regard applies fully to petitioner's claim in the instant action.

## IV. THE *BROWN* ISSUE—NON–RECORD MATERIAL BEFORE THE REVIEWING COURT

Petitioner argues that the Florida Supreme Court relied on nonrecord information, such as psychiatric and pre-sentence investigation reports, in the direct review of his conviction and sentencing. Petitioner claims that this practice infringed on his constitutional guarantees including the right to due process of law, the effective assistance of counsel, confrontation, freedom from cruel and unusual punishment, and the protection against compelled self-incrimination.[8] He argues that the use of this material runs afoul of the principles of *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (petitioner was denied due process when death sentence was imposed, at least in part, on the basis of information that he had no opportunity to deny or explain).

■ The *en banc* court in *Ford* denied an identical claim in that action. The *Ford* court relied upon the Florida Supreme Court's opinion in *Brown v. Wainwright*, 392 So.2d 1327, *cert. denied*, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981),[9] to conclude that:

Even if members of the [Florida Supreme C]ourt solicited the material with the thought that it should, would or might be used in the review of capital sentences, the decision of the Florida court that it should not be so used, the statement that it was not used, and the

---

An attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of his assumptions are reasonable. *Washington v. Strickland*, 693 F.2d at 1258.

The court in *Washington v. Strickland* suggested several factors to employ in determining whether strategic choices based upon a set of assumptions are reasonable, including: the experience of the attorney; the consistency of the lines of defense pursued and not pursued; and the degree of possible prejudice that might foreseeably result from the strategic choice. *Id.* at 1248 n. 23. A consideration of these factors, as well as the concern that presenta-

tion of evidence of Foster's "crazy behavior" by using additional family or friends as witnesses could have led to the introduction of some very unsavory testimony concerning petitioner's past acts, leads to the conclusion that Mayo's strategy choice was prudent.

**8.** Petitioner alleges violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

**9.** *Brown v. Wainwright* was a direct petition for writ of habeas corpus by 123 Florida death row inmates alleging the same facts of the receipt of non-record materials during the pendency of their capital case appeals. The Florida Supreme Court denied class relief.

rejection of the notion that it affected the judgment of the court ends the matter when addressed at the constitutional level.

*Ford v. Strickland,* at 811. We therefore deny petitioner's *Brown* claim in the instant action.

## V. THE *LOCKETT* ISSUE—INSTRUCTIONS ON MITIGATING CIRCUMSTANCES

Petitioner's final claim is that the trial judge's instructions precluded the jury from considering *non-statutory* mitigating circumstances, in violation of the holding of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The Supreme Court in *Lockett* held that the "Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any circumstances of the offense the defendant proffers as a basis for a sentence less than death." *Lockett,* 438 U.S. at 604, 98 S.Ct. at 964–65 (footnote omitted) (emphasis in original).

During the sentencing phase, the trial judge instructed the jury, "The aggravating circumstances which you may consider *are limited* to such of the following as may be established by the evidence." The judge then read the statutory aggravating circumstances. He next instructed on the mitigating circumstances by stating, "[t]he mitigating circumstances which you may consider if established by the evidence are these." The judge then read the seven statutory mitigating circumstances. Foster contends that this instruction was insufficient to permit the jury reasonably to understand that they were entitled to consider non-statutory factors in mitigation of petitioner's sentence. Petitioner claims that he adduced evidence of several non-statutory mitigating factors, including: his willingness to cooperate with the police and to confess the crime; the effect of alcohol, due to his mental illness, on petitioner's ability

to premeditate and possess the requisite intent to commit murder; and petitioner's need for psychiatric treatment. The State of Florida argues that consideration of this issue is barred under the procedural default doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 954 (1977), due to Foster's failure to object at trial or to raise this issue on direct appeal.

The petitioner in *Ford* raised a similar *Lockett* claim. In *Ford,* the trial judge instructed the jury, "You shall consider only the following aggravating circumstances . . .," and read the statutory language. With regard to mitigating circumstances, he said, "You shall consider the following . . .," omitting the word "only" and reading the statutory mitigating circumstances. The *Ford* Court found that petitioner failed to meet the cause and prejudice exception to *Sykes.* The Court noted that petitioner's trial occurred two years before *Cooper v. State,* 336 So.2d 1133, 1139 n. 7 (Fla.1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977), in which the Florida Supreme Court ruled explicitly that the jury could consider only statutory mitigating circumstances, and four years before *Lockett,* which provided a directly contrary resolution of the issue. Nonetheless, the *Ford* Court refrained from determining whether this constituted "cause" for petitioner's state procedural default because the Court found that petitioner failed to meet the *Sykes* prejudice prong. The Court determined that the challenged jury instructions did not rise to the level of "*actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.*" *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816, 832 (1982) (emphasis in original).

We note at the outset of our analysis that the proof of nonstatutory mitigating circumstances adduced by petitioner bears a striking resemblance to the statutory factors the jury indisputably could have considered. We thus treat all but one category of petitioner's adduced proof as encompassed within the statutory mitigating cir-

cumstances. Petitioner's proffered evidence of his willingness to confess and cooperate with the police is the only proof which raises the *Lockett* claim.

We are unable to conclude that Foster's *Lockett* claim is controlled entirely by the *Ford* decision. The *en banc* Court in *Ford* did not reach the merits of the constitutionality of the jury instructions under *Lockett*. Despite the fact that the instructions in *Ford* and the instant action are virtually identical, several features of petitioner's sentencing hearing militate against applying the *Sykes* bar to Foster's claim. First, the case for cause is similarly strong here as it is in *Ford*. Foster's trial occurred in 1975, one year before *Cooper* and three years before *Lockett*. It would be difficult to characterize the *Lockett* claim as "available" during petitioner's trial, as the Supreme Court recently required to support a finding of procedural default:

> Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labelling alleged unawareness of the objection as cause for a procedural default.

*Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982).

The second reason for not applying the *Sykes* bar to Foster's claim rests on the *en banc* court's discussion of the trial judge's order in *Ford* that, "[T]here are no mitigating circumstances existing—either statutory or otherwise—which outweigh any aggravating circumstances." The *en banc* Court interpreted this statement as weighing in favor of the conclusion that the jury did not perceive a restriction on the use of any mitigating evidence and that there was a total absence of such evidence. There was no such indication in the instant action. In addition, as we discuss *infra* at n. 13, petitioner adduced substantial evidence of *statutory* mitigating factors. Thus, *Ford* is not necessarily dispositive of our resolution of the prejudice issue here because of this factual distinction.

■ While we conclude that the *Ford* decision does not prevent our examination of the merits of petitioner's *Lockett* claim, we find that Foster has failed to adduce sufficient facts to overcome the *Sykes* prejudice prong in order to establish a constitutional claim deserving of redress in this habeas action. The only mitigating factor petitioner proffered, which was not already contemplated by the statutory categories, concerns his willingness to confess and cooperate with the police. The record contains only scant evidence to support this claim. Foster called the police to turn himself in only after investigators had already discovered blood soaked clothes in his bathtub. We decline to regard petitioner's pretrial confession as a factor in mitigation of his crime because petitioner attempted to suppress this confession. Foster cannot in retrospect claim to have cooperated once he lost his confession motion. Similarly, petitioner waited until he was deeply enmeshed in perjured testimony before he confessed on the witness stand. The circumstances of his confession during trial therefore fairly negate any inference of petitioner's cooperativeness.

Because we are not persuaded that petitioner presented significant nonstatutory mitigating evidence that would justify our overturning the state court's factual findings to the contrary, especially in light of the presumption of correctness that attaches to these findings under 28 U.S.C. § 2254(d), we conclude that petitioner's *Lockett* claim is properly barred by the *Sykes* prejudice prong.

## THE JUDGMENT OF THE TRIAL COURT DENYING THE WRIT IS AFFIRMED.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure, Eleventh Circuit Rule 26), the Suggestion for Rehearing En Banc is DENIED.

ON PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING
EN BANC

PER CURIAM:

Upon further consideration, we conclude that the failure of the appellant to raise the issue concerning "the trial court's findings of fact in support of its sentence" in its brief or in oral argument before us forecloses our consideration of the issue *sua sponte*. *Cf.* *Stephens v. Zant,* 716 F.2d 276 (5th Cir.1983), on remand from the Supreme Court of the United States).

That part of our opinion in this case beginning with VI and through the conclusion, together with the dissenting opinion, are hereby stricken and the following is substituted in lieu thereof:

THE JUDGMENT OF THE TRIAL COURT DENYING THE WRIT IS AFFIRMED.

No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure, Eleventh Circuit Rule 26), the Suggestion for Rehearing En Banc is DENIED.