No. 80–6434. BROWN ET AL. *v.* WAINWRIGHT, CORREC-
TIONS SECRETARY. Sup. Ct. Fla. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins,
dissenting.

I continue to believe that in all circumstances the death
penalty is cruel and unusual punishment. *Gregg* v. *Georgia*,
428 U. S. 153, 231 (1976). However, I dissent from the de-
nial of certiorari in this case on the additional ground that the
Florida Supreme Court practice challenged by petitioners is
questionable under prior precedents of this Court and de-
serves plenary consideration.

Petitioner Brown and 122 other Florida inmates sentenced
to death brought original petitions for writs of habeas corpus
in the Florida Supreme Court, alleging that since 1975, the
Florida Supreme Court has

> "engaged in the continuing practice of requesting and re-
> ceiving information concerning capital appellants which
> was not presented at trial and not a part of the trial
> record or record on appeal. The information includes
> . . . pre-sentence investigation reports concerning the
> capital offense under review or prior convictions unre-
> lated to the capital offense; psychiatric evaluations or
> contact notes [made in the correctional system after con-
> viction]; psychological screening reports; recitations of a
> capital defendant's refusal to submit to a psychiatric
> examination from which a report could be prepared;
> post-sentence investigation reports; probation or parole
> violation reports; and state prison classification and ad-
> missions summaries." App. to Pet. for Cert. 2c–3c.

With rare exceptions, the State Supreme Court allegedly
received this information without notice to the appellant
whose sentence the court was reviewing or to his attorney.
To support these allegations, petitioners offered written re-

quests by the Court Clerk to correctional officials requesting such information, and letters of transmittal from these officials. Petitioners also suggest that this kind of information may have been received in some cases but not others, thus skewing the appellate process without regard to whether the information may benefit the particular appellant whose sentence is under review. The court accepted these allegations as true for the purposes of its decision but denied the petitions.

I believe that the Florida court's *ex parte* consideration of such nonrecord evaluative data relating to individual appellants during the court's review is questionable as a matter of due process and is inconsistent with this Court's past insistence on strict procedural regularity in the imposition and review of capital sentences. See *Gardner* v. *Florida,* 430 U. S. 349 (1977). Moreover, much of the information appears to be inadmissible and unreliable hearsay, which petitioners should at least have the opportunity to cross-examine. Some may be inadmissible under this Court's recent decision in *Estelle* v. *Smith,* 451 U. S. 454 (1981). Accordingly, I dissent.

*Gardner, supra,* invalidated a Florida death sentence in which the sentencing court had relied in part on a confidential portion of a presentencing report that had not been disclosed to the defendant or to his counsel. The plurality opinion emphasized the "vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." 430 U. S., at 358. Contrary to the State Supreme Court's view, *Gardner* suggested no relevant distinction between the trial court's initial imposition of a sentence and an appellate court's discharge of its mandatory review function. Such a distinction is irreconcilable with this Court's decision in *Proffitt* v. *Florida,* 428 U. S. 242 (1976), which approved the Florida appellate review procedure on

the premise that "the Florida court has undertaken responsibly to perform its function of death sentence review with a maximum of rationality and consistency." *Id.*, at 258–259 (joint opinion of Stewart, POWELL, and STEVENS, JJ.). If the allegations here are true, then that premise of rationality is clearly invalid.

The State Supreme Court attempted to justify its receipt of this information on the ground that it does not rely on this information in fulfilling its appellate function in capital cases. In reviewing the imposition of the death penalty, the court first reviews each sentence for procedural regularity and then compares the sentence with prior capital cases to ensure that the sentence imposed is not disproportionate. The court stated that these two appellate functions do not involve the reweighing or reevaluating of evidence. Thus, the court concluded, "non-record information we may have seen, even though never presented to or considered by the judge, the jury or counsel, plays no role in capital sentence 'review.'" 392 So. 2d 1327, 1332–1333 (1981).

I am not persuaded. If the court does not use the disputed nonrecord information in performing its appellate function, why has it systematically sought the information? Moreover, the court intimated that it does use the information, although in an undisclosed "procedural" manner: "The 'tainted' information we are charged with receiving was . . . in every instance obtained to deal with newly-articulated procedural standards." *Id.*, at 1333, n. 17. Petitioners are entitled to the assurance either that such information is not sought and placed before the court, or that its use is circumscribed by appropriate safeguards.

If untested by the adversary process, the disputed information may distort the State Supreme Court's appellate functions. When reviewing a sentence for procedural regularity, the court might uphold or vacate the sentence in part

on grounds not considered by the trial court, or on factually erroneous grounds, because it has viewed *ex parte* unreliable, nonrecord information concerning the appellant. And when reviewing sentences for proportionality, the court's comparison of the sentences of other capital defendants with that of the appellant is rendered meaningless if the court has upheld or vacated the death sentences of other individuals after viewing this kind of information, or if the court used possibly erroneous information only as background data for its proportionality determination. The more systematic the practice of reviewing such information, the greater the danger of this second form of distortion.

The court characterized these petitions as "attempts to pervert judicial processes, or to castigate the judiciary," which is simply trying to perform its difficult task of reviewing capital sentences. *Id.*, at 1333. This is exaggeration. Petitioners' position does not preclude the court from considering any record or judicially noticeable information in reviewing sentences. Petitioners are not asking permission to examine the thought processes of appellate judges, or to obtain disclosure of each item of judicially noticeable nonrecord information considered on appeal. They *are* asking permission to examine and dispute the accuracy or completeness of nonrecord information submitted to the court pertaining to that individual appellant.

Because I believe that this practice is questionable on due process and Eighth Amendment grounds, and because I believe that it may distort the mandatory review of capital sentences by the State Supreme Court, I would grant the petition for certiorari. Although petitioners might seek to develop the record on these issues further in a federal habeas corpus proceeding, the existing record is sufficiently disturbing to demand plenary review.