Carl Elson SHRINER, Petitioner,

v.

Louie WAINWRIGHT, Secretary, Florida Department of Corrections, Respondent.

No. TCA 82–0832.

United States District Court, N.D. Florida, Tallahassee Division.

April 20, 1982.

Daniel T. O'Connell, Gainesville, Fla., for petitioner.

Carolyn Snurkowski, Asst. Atty. Gen., Tallahassee, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING STAY OF EXECUTION

STAFFORD, Chief Judge.

### History of the Case

Petitioner Carl Elson Shriner was convicted of first degree murder in the Circuit Court of Alachua County, Florida on April

14, 1977, with the jury unanimously recommending the death penalty. Sentencing proceedings were held before the state trial judge on April 29, 1977 at which time Shriner was sentenced to death. Shriner then appealed to the Florida Supreme Court, which affirmed his conviction and death sentence three years later, May 22, 1980. *Shriner v. State,* 386 So.2d 525 (Fla.1980). Shriner then petitioned the U.S. Supreme Court for certiorari, which was denied on January 12, 1981. *Shriner v. State,* 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981). More than one year later clemency was denied by the appropriate Florida entity, and on March 22, 1982, the Governor of Florida signed the death warrant ordering Shriner's execution between April 16, 1982 and April 23, 1982. Execution has been scheduled for 7:00 a.m. tomorrow, April 21, 1982.

Petition for writ of habeas corpus (Document 2) along with an application for stay of execution (Document 1) were filed in this court on April 14, 1982, coincidentally five years to the day that Shriner was found guilty by a state court jury in Gainesville. Leave to proceed in forma pauperis was granted (Document 5). A hearing was held before me on April 16, 1982 where Shriner was represented by his attorney on appeal and the respondent by the staff of the Attorney General of Florida, who likewise had responsibility for representing the state's interest on appeal. No evidence was presented, and the only request for additional evidentiary consideration was Shriner's request and motion to make discovery concerning the receipt of non-record material by the Florida Supreme Court (Document 6). Response was filed in open court (Document 7) and extensive argument was had. All matters and issues were taken under advisement and are now dealt with *in seriatim* by this order.

## A.

Petitioner claims that his post-arrest custodial statement was admitted at his state court trial in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. As sub-issues, petitioner claims that his right to cut-off interrogation was disregarded by the authorities, that the statement was obtained through exploitation of his illegal arrest and that his statements were coerced and involuntary.

Under 28 U.S.C. § 2254(d) this court must presume correct those written findings of the Florida courts constituting determinations after hearings on the merits of factual issues unless it shall appear, among other statutory exceptions, that such factual determinations are not fairly supported by the record. In *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), after remand, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982), the United States Supreme Court noted

> Of course, the federal courts are not necessarily bound by the state court's findings. Section 2254(d) permits a federal court to conclude, for example, that a state finding was "not fairly supported by the record." But the statute does require the federal courts to face up to any disagreement as to the facts and to defer to the state court unless one of the factors listed in 2254(d) is found. Although the distinction between law and fact is not easily drawn, we deal here with a statute that requires the federal courts to show a high measure of deference to the fact findings made by the state courts.

*Id.* at 597, 102 S.Ct. at 1307.

Circuit Judge Green held a pre-trial hearing on defense motions to suppress on February 3, 1977. Deputy Sheriff William Denson testified at the hearing that he received on October 23, 1976, a be-on-the-lookout (BOLO) bulletin from his department containing a composite sketch of a robbery suspect. He swore that on that date he noticed that a passenger in a nearby car bore a striking resemblance to the composite. Petitioner testified that Officer Denson, who stopped him, immediately showed him a copy of the composite drawing from the BOLO, indicating his belief that it resembled petitioner Shriner.

Petitioner gave conflicting testimony regarding whether he had asked for an attorney. Petitioner Shriner first stated that he had not told Gainesville Police Department Detective Sergeant Blitch and Assistant State Attorney Nilon that he wanted an attorney. Next he testified that he had. Finally, he declared that he didn't remember. *See* Supplemental Record on Appeal, partial transcript of hearing on February 3, 1977, at 100–101. Petitioner Shriner was uncertain whether he ever told Blitch and Nilon he was tired. He said he made his statement in confession to preclude any involvement of his girlfriend Carol Griffis. Petitioner further testified that he understood the meaning of *Miranda* warnings and had been given several the night of his interrogation. It is this court's view that the record supports the finding of the Florida Supreme Court that the arresting officer had probable cause to take petitioner Shriner into custody. Likewise, the record fairly supports the Court's finding that during custodial interrogation authorities respected petitioner's right to cut-off questioning on the subject to which he expressed a desire to end questioning, and in no way coerced a confession.

### B.

Petitioner claims that the admission, over objection, of evidence that petitioner robbed the Eight Days Inn at approximately 3 A.M. on the same morning as the murder constitutes a denial of "fundamental fairness." *See Bryson v. Alabama,* 634 F.2d 862, 864–5 (5th Cir.1981). "A violation of state evidentiary rules will not in and of itself invoke Section 2254 habeas corpus relief. The violation must be of such a magnitude as to constitute a denial of 'fundamental fairness.'" *Id.* at 864–5. The Florida Supreme Court reviewed the objection on this issue and concluded that the evidence was admissible under Florida law since relevant to identity. Mr. Fuller, the hotel clerk, identified petitioner as the robber who used a gun closely resembling the murder weapon within 90 minutes of the murder. This court agrees that there was no erroneous admission of prejudicial evidence. Furthermore, Shriner's own confession to the crime charged in this case provides overwhelming evidence of his guilt.

### C.

Petitioner contends that his sentence violates the Eighth and Fourteenth Amendment requirements of individualized sentencing where the trial court limited consideration of relevant mitigating factors. Petitioner claims (1) that instructions given the jury limited its consideration of mitigating factors; (2) that the sentencing judge considered only the mitigating factors set forth in § 921.141(6), Florida Statutes; and (3) that the Florida Supreme Court limited its review of petitioner's sentence to the absence of only statutory mitigating circumstances.

The Eighth and Fourteenth Amendments require that the process of imposing the "profoundly different" penalty of death provide for individualized sentencing determinations:

> [W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

*Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). Petitioner contends that the procedure in the present case operated in the same manner as the Ohio statute struck down by the United States Supreme Court in *Lockett* by precluding presentation and consideration of mitigating factors.

In *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981) the Court found that a reasonable juror may have interpreted the jury instructions to limit his consideration of nonstatutory mitigating factors and to consider only those circumstances specifically enumerated by the judge in his charge. Likewise, Petitioner alleges that the charge in this case failed to apprise jurors of their duty to consider nonstatutory mitigating

factors. Evidence relative to sentencing was presented immediately upon the jury's return with a verdict of guilty. The defendant sought a continuance to allow The Reverend Gene Parks to be present to testify to the horrors of electrocution. Judge Green denied the motion. The State of Florida offered as its only evidence an exhibit of a judgment and sentence of a conviction. The defendant's attorney stated, "Your Honor, at this time the defense will be producing no evidence in regard to mitigating facts to the jury." *See* Trial Transcript, at 872. The defendant personally addressed the jury and asked for no mercy, stating that they would do him a favor by recommending death. The Judge read his charge to the jury stating "The mitigating circumstances you may consider, established by the evidence, are as follows: . . ." *See* Trial Transcript, at 900. Judge Green then read the list of mitigating circumstances from § 921.141(6), Florida Statutes. Defendant made no objection. All twelve jurors recommended death.

■ The State correctly notes that under Fla.R.Crim.P. 3.390(d)

No party may assign as error grounds of appeal the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . .

The record in this case is devoid of any objection with regard to the jury instruction, and this issue was not raised on appeal. Failure to make a contemporaneous objection is a bar to consideration of the issue unless the defendant is excused from the default by proving cause and actual prejudice. *See Engle, Correctional Superintendent v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (U.S.1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In *Ford v. Strickland,* 676 F.2d 434 (11th Cir.1982), the Court considered a similar situation in which the Florida trial judge charged the jury on aggravating circumstances, "you shall consider only the following . . .," and read the statutory language, § 921.141(5), Florida Statutes (1977) and with regard to mitigating circumstances said, "you shall consider the following . . ." again reading the appropriate statutory language. As in this case, Ford neither objected to the instruction at trial nor raised the issue on appeal. The United States Court of Appeals for the Eleventh Circuit concluded that the instruction did not so "infect" the entire sentencing process as to present a due process violation. *Id.* at 10. The Court found that unlike the situation in *Washington v. Watkins,* the judge in *Ford* read the jury the entire list of statutory mitigating factors and evinced an understanding in his final order on sentencing that he should consider nonstatutory mitigating circumstances also.

■ This court is of the opinion that there was no error in the charge, in light of the Eleventh Circuit's recent ruling in *Ford v. Strickland,* 676 F.2d 434 (11th Cir.1982). In this case, the defendant presented no evidence in mitigation, the defendant asked the jury to recommend death, and his counsel argued no mitigating factors specific to defendant.

■ The final sentencing hearing before Judge Green was held on April 29, 1977. The defendant Shriner told the Judge that he no longer wanted a sentence of death. His attorney offered the pre-sentence investigation as evidence in mitigation and cited defendant's lack of education, sociopathic personality and harsh childhood. Judge Green announced from the Bench that he found no mitigating circumstances and two aggravating circumstances: committing a capital felony during commission of a robbery and for the purposes of avoiding arrest —§ 921.141(5)(d) and (e), Florida Statutes (1977). *See* Transcript of Sentencing Proceedings, at 12–13. In his written Sentence of Death, Judge Green cited as the two aggravating circumstances § 921.141(5)(b) and (d). Petitioner claims that the trial judge injected an arbitrary and unreliable factor into the sentencing proceeding by changing his findings in imposing death. This issue was raised on appeal to the Florida Supreme Court which found the written findings sufficient. This court finds no

prejudice to petitioner and deems this issue to be without merit.

In his written order, Judge Green found no mitigating circumstances with the possible exception of § 6(f), due to the fact that defendant's pre-sentence investigation revealed him to be a sociopathic personality. Judge Green concludes that an "examination of these reports, however, does not lead one to the conclusion that his capacity is diminished thereby. The Court finds that the aggravating circumstances far outweigh the mitigating circumstances." *See* Record on Appeal, p. 46. Judge Green continues,

> In addition, an examination of the pre-sentence investigation, which was made available in its entirety, including the confidential section, to the attorney for the Defendant prior to sentencing, indicates that during the Defendant's incarceration at the Department of Offender Rehabilitation, he has presented a discipline problem and to some degree a security risk. The investigation further shows that he has engaged in a long pattern of violent criminal conduct. In addition, it is apparent that the robbery that was committed in perpetration of the death of Judith Ann Carter was not the sole robbery committed by this Defendant subsequent to his release from prison some three weeks prior to the date of the offense.

*See* Record on Appeal, at 46. Petitioner urged on appeal to the Florida Supreme Court that the trial court erred in sentencing by considering nonstatutory aggravating factors.

Upon review, the Florida Supreme Court requested and received from Judge Green all information he had before him for consideration at sentencing. In its order in *Shriner v. State,* 386 So.2d 525 (Fla.1980) the Florida Supreme Court found sufficient evidence to support the two aggravating circumstances found by Judge Green and no mitigating circumstances. The Court noted that it was harmless error to consider additional nonstatutory aggravating circumstances since there were no mitigating factors. "We have here two valid aggravating circumstances counterbalanced by no mitigating circumstances. Since death is presumed in this situation, improper consideration of a nonstatutory factor does not render the sentence invalid ..." *Id.* at 534, citing *Elledge v. State,* 346 So.2d 998, 1002–3 (Fla.1977) and *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973).

It does not appear that Judge Green limited his consideration of mitigating factors to only those specifically enumerated in the statute. Judge Green found psychiatrist's reports diagnosing Shriner as a "sociopathic personality" insufficient to constitute a mitigating circumstance, since in his view Shriner's capacity was not diminished. The Florida Supreme Court, upon review of the record and the same pre-sentence investigation material, also found no mitigating circumstances. There is likewise no indication that the Florida Supreme Court limited its review to the absence of only statutory mitigating circumstances. Indeed, the Court specifically holds "[t]he record also supports the finding of no mitigating circumstances." *Shriner v. State,* 386 So.2d 525, 534 (Fla.1980).

### D.

■ Petitioner Shriner claims that the testimony of a priest who had witnessed an execution by electrocution should not have been precluded from the jury because it denied petitioner the benefit of the judgment of the community in violation of the Eighth Amendment. Petitioner's attorney made a proffer to the court [1] of the expected testimony of the Reverend Gene Parks, a Methodist minister from Jacksonville. Judge Green ruled that this testimony would be irrelevant and improper for the

---

1. "Rev. Parks' testimony will be directed towards simply an eyewitness description of the manner that is prescribed in the State of Florida, that being electrocution. His testimony would be a matter of his eyewitness recollec- tion of the electrocutions that he has seen specifically, the manners that were carried out as a result of death by electrocution." Volume V, Trial Transcript, at 870.

jury to hear on the question of penalty. On appeal, the Florida Supreme Court described as meritless the contention that it was error to exclude the clergyman's testimony. This court agrees that a description of electrocution would be irrelevant to the sentencing inquiry.

### E.

Petitioner contends that his death sentence shocks the conscience because the procedures used to impose it were grossly unreliable and wholly arbitrary and did not meet the safeguards required by the Eighth and Fourteenth Amendments to support a constitutional death sentence. In support of this contention, petitioner cites errors in the prosecutor's arguments to the jury and in the Florida Supreme Court's review of the trial court's consideration of nonstatutory aggravating factors. Petitioner also cites several other issues which this court has already considered under section "C" of this order.

Petitioner Shriner states that the trial court allowed the prosecutor to argue, over objection of counsel, that all deaths are heinous, atrocious and cruel if they are unlawful and that petitioner created a great risk of death to many people in robbing the Eight Days Inn. Section 2254(b) of 28 U.S.C. provides that an application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." The parties represented to this court at the April 16 hearing that all issues urged in the petition for writ of habeas corpus had been presented to the state courts. However, a review of the appellate briefs does not disclose that these two alleged errors were presented to the Florida Supreme Court for consideration.

In a similar case, the United States Court of Appeals for the First Circuit recognized that arguments not specifically made on appeal to the state court may be "merely supportive of claims earlier put in issue and do not present new issues which . . . would bar our present consideration of them." *Sullivan v. Scafati,* 428 F.2d 1023 (1st Cir.

1970), cert. denied, 400 U.S. 1001, 91 S.Ct. 478, 27 L.Ed.2d 452 (1970).

■ The instant claims present new issues not raised on appeal and are not merely new arguments. Having not raised either of these issues on appeal, and having apparently not pursued state collateral review, petitioner may not now obtain review of these issues here. 28 U.S.C. 2254; *Pitchess v. Davis,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *McClain v. Kitchen,* 659 F.2d 870 (8th Cir.1981); *Manning v. State of Alabama,* 526 F.2d 355 (5th Cir.1976). This court would note that during the sentencing phase Judge Green gave the jury correct instructions on the law and properly admonished the jury to follow that law. No mitigating circumstances were either presented or argued to the jury, and both the trial court and Florida Supreme Court found that no mitigating factors exist in this case.

At the April 16 hearing, petitioner argued that the Florida Supreme Court gave only limited review of Judge Green's sentence. Petitioner Shriner contends that the Court applied a per se rule that death is presumed correct once the trial judge finds no mitigating circumstances to counterbalance statutory aggravating factors. However, petitioner misreads the opinion of the Florida Supreme Court. The Court first finds that "the record is replete with evidence to support the judge's finding of aggravating circumstances numbered two and four." *Shriner v. State,* 386 So.2d 525, 534 (Fla.1980). Upon review of the record which included petitioner's presentence investigation with psychiatric reports, the Court stated, "[t]he record also supports the finding of no mitigating circumstances." *Id.* at 534. Finally, the Court concludes, "[w]e have here two valid aggravating circumstances counterbalanced by no mitigating circumstances." *Id.* Only after these findings does the Court state, "[s]ince death is presumed in this situation . . . ." *Id.* I find petitioner's claim of irregularities in the Court's review of Judge Green's sentence to be unfounded.

## F.

The sixth issue raised by petitioner Shriner is the so-called *Brown* issue, resulting from a decision of the Florida Supreme Court in *Brown v. Wainwright,* 392 So.2d 1327 (Fla.1981), *cert. denied* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981) [No. 80–6434, Nov. 2, 1981]. Shriner's petition and application for stay of execution were filed here April 14, 1982. The next day, a panel of the Eleventh Circuit Court of Appeals decided *Ford v. Strickland,* 676 F.2d 434 (11th Cir., 1981), a death penalty case raising substantially the same issues as raised here. After disposing of the other claims made by Ford, the panel dealt directly with the question of nonrecord material before the Florida Supreme Court. Like Ford, Shriner was one of the petitioners in *Brown v. Wainwright,* 392 So.2d 1327, and like Ford cannot allege that the Florida Supreme Court specifically reviewed material which was not a matter of record in his case. In the instant case, the Florida Supreme Court requested the trial court to send to it all materials viewed by the state trial judge at sentencing and received the pre-sentence investigation report which included psychological and psychiatric reports on Shriner. Thus, there is no evidence that the Florida Supreme Court considered any non-record material in Shriner's case nor does Shriner make such an assertion, except to say that he is not sure and would like to conduct discovery in that regard. *Ford v. Strickland* is dispositive on this issue, and precludes such inquiry.

## CONCLUSION

Petitioner Shriner had a fair trial. He appealed his conviction to the state's highest court which considered it for over three years and then affirmed his conviction and death sentence. He then asked the U.S. Supreme Court for review, which was denied. A state clemency hearing likewise found no basis for relief. Throughout these nearly five years of review and consideration, Shriner was accorded all of his constitutional guarantees at every stage. He has presented nothing to this court warranting relief here.

All cases, even those where the death penalty is imposed, must ultimately be concluded. Carl Elson Shriner has had every protection the Constitution and laws require and there is no just reason for further delay.

Accordingly, it is ORDERED:

1. The petition for writ of habeas corpus is DENIED.

2. Stay of execution is DENIED.