Luis Carlos ARANGO a/k/a Carlos Luis Arango, Florida Inmate No. 075042, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Florida Department of Corrections, Respondent.

No. 83–1077–CIV–EPS.

United States District Court, S.D. Florida, Miami Division.

May 6, 1983.

Sharon B. Jacobs, Chaykin, Karlan & Jacobs, Coral Gables, Fla., for petitioner.

Penny Brill, Asst. Atty. Gen. of Florida, Miami, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, VACATING STAY OF EXECUTION AND MEMORANDUM OPINION

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Petition for Writ of Habeas Corpus filed on behalf of Petitioner, LUIS CARLOS ARANGO a/k/a CARLOS LUIS ARANGO (Arango) pursuant to Title 28, United States Code, Section 2254. Arango raised several constitutional grounds for relief. However, this Court finds no merit in Arango's petition and, therefore, it is dismissed. Moreover, in light of this decision dismissing the petition for writ of habeas corpus, the stay of execution heretofore entered on April 27, 1983 is vacated.

## I. BACKGROUND

Arango was convicted in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, of first degree murder and possession of a controlled substance. Petitioner was sentenced to death by electrocution on the first degree murder conviction, and to a term of five (5) years imprisonment in the state penitentiary on the conviction for possession of cocaine, this latter sentence to run concurrently.

On direct appeal to the Florida Supreme Court, Arango raised the following issues: that the trial court improperly denied his motion to suppress evidence obtained as the result of an unlawful, warrantless entry into his apartment; that the trial Court's instruction to the jury at the penalty phase unconstitutionally shifted to him the burden of proving that the mitigating circumstances outweighed the aggravating circumstances; that the trial court's instruction of the "especially heinous, atrocious or cruel" aggravating circumstances was inadequate and the trial court refused to give instructions properly defining these terms; that the trial court erred in allowing the prosecution to introduce the irrelevant and inflamatory testimony of the medical examiner to prove the applicability of the terms heinous, atrocious or cruel; that the death penalty was a disproportionate punishment; and that the trial court improperly excused a venireman for cause over defendant's objection in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Florida Supreme Court affirmed both the convictions and the sentence. *Arango v. State,* 411 So.2d 172 (Fla. 1982), and the United States Supreme Court declined to review that decision. *Arango v. Florida,* 457 U.S. 1140, 102 S.Ct. 2973, 73 L.Ed.2d 1360 (1982).

During the pendency of Petitioner's direct appeal, Arango joined with numerous other death row inmates in filing an application for extraordinary relief and petition for habeas corpus based on the allegation that the Florida Supreme Court had a practice of reviewing *ex parte,* non-record information concerning capital defendants, mental health and personal background. The Supreme Court of Florida denied relief, *Brown v. Wainwright,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).[1]

Governor Graham signed Arango's death warrant on April 6, 1983. Pursuant to this warrant, the execution was to be scheduled "some day of the week beginning noon, Friday, the 29th day of April, 1983, and ending noon, Friday, the 6th day of May, 1983 . . . . "

---

1. Although it is not before this Court, it should be noted that Arango filed a motion for post-conviction relief in the Circuit Court of the Eleventh Judicial Circuit, in and, for Dade County, Florida, pursuant to Fla.R.Crim.P. 3.850. Arango has appealed the denial of his motion for post-conviction relief and has filed a petition for writ of habeas corpus in the Florida Supreme Court. Oral argument has been scheduled for the appeal and the petition for May 2, 1983 at 9:30 a.m. Of course, the issues raised in the motion for post-conviction relief and the petition for writ of habeas corpus now pending oral argument before the Florida Supreme Court are not the subject of the Petition for Writ of Habeas Corpus at issue before this Court to which this opinion directs itself.

On April 27, 1983, a Petition for Writ of Habeas Corpus, Application for Stay of Execution and Motion for Continuance was filed on behalf of Arango in the United States District Court, Southern District of Florida.[2] This Court immediately held a hearing. Counsel for Arango indicated to this Court that although the execution is scheduled for 7:00 a.m., May 3, 1983, the Superintendent of Prisons has the authority to execute Arango at any time subsequent to April 29, 1983. Counsel further indicated that an application for stay of execution was denied by the Florida Supreme Court.

Because of this Court's concern over the possibility of the Superintendent of Prisons exercising his authority before all the issues in this Petition could be addressed, this Court granted the application for stay of execution until 6:59 a.m., May 3, 1983. This stay was in no way intended to interfere with any pending state court matters and to this Court's knowledge it does not. However, this Court further indicated that, if it becomes necessary, upon the filing of any additional petition for writ of habeas corpus subsequent to oral argument before the Florida Supreme Court on May 2, 1983, an immediate hearing would be convened.

On April 30, 1983, this Court conducted a full hearing on all the issues raised in Arango's Petition for Writ of Habeas Corpus including an evidentiary hearing on the issue that has come to be known as the *Ford v. Strickland* issue, *infra*, (*see also Brown v. Wainwright, supra*). All the issues that were presented to this Court for review had been presented to the Florida Supreme Court either on direct appeal or by petition for writ of habeas corpus. Therefore, this Court found and the State stipulated, that Arango had exhausted all of his state court remedies for the purpose of the present petition for writ of habeas corpus and regardless of the petition for writ of habeas

corpus and appeal pending before the Florida Supreme Court, this Court was not presented with a mixed habeas corpus petition. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

As heretofore noted, this Court finds no merit to Arango's Petition. Arango raised basically six (6) constitutional errors in the State court. These alleged constitutional errors were fully and fairly reviewed by this Court and found to contain no merit.

## II. ANALYSIS

### A. THE BROWN ISSUE: NON–RECORD MATERIAL BEFORE THE FLORIDA SUPREME COURT

Arango raised as the first ground of this Petition that his constitutional rights were violated when the Florida Supreme Court requested, received and reviewed information which was not part of the trial record or the record on appeal of his case or the cases of his fellow death row inmates. In regard to this contention, Arango requested this Court to conduct an evidentiary hearing. Over the objection of the Attorney General, this Court granted the evidentiary hearing and the exhibits attached to Arango's Petition for Writ of Habeas Corpus were accepted into evidence. These exhibits consist of the Petition for Writ of Habeas Corpus in *Brown v. Wainwright* and other various exhibits such as the appendices to the Petition and other exhibits referencing the Clerk of the Florida Supreme Court's requesting and receiving non-record material.

Arango next requested to take the testimony of the Clerk and staff of the Florida Supreme Court regarding two areas: (1) the possibility that the requested records had not been destroyed as asserted in the *Brown* petition and (2) whether with regard to Arango a request for non-record material

**2.** This Court conducted an emergency hearing on April 27, 1983. At that time, the Court requested the parties to provide it with a complete record of all proceedings relevant to the issues before it. Subsequent to that time, the Attorney General's office delivered to this Court the entire record of transcripts on appeal. This record contained the following exhibits: A, part I, II and III, B, C, D, E, F, G, H, I, J, K, L and M hereinafter Appendix A, B, etc. at ——. The Court also received from the Attorney General's office a response to the Petitioner's Petition for Writ of Habeas Corpus.

was made regardless of no material being received. The Court denied the above request.

As to whether the requested records had been destroyed, the Court notes that Arango was a member of that group of prisoners who originally joined Brown in challenging the constitutionality of their sentences to death. On page three (3) of that original petition the last paragraph of Section III—FACTUAL BASIS FOR RELIEF—it is stated:

> Upon information and belief, a quantity of the information received by the Court, and of records reflecting the practice of requesting and receiving it as alleged in the preceding paragraph, has at the Court's direction been destroyed or purged from this Court's files. As a result, it is no longer possible for petitioners to identify all of the cases in which such information was requested or received.

In addition, Petitioner's counsel admitted that no evidence exists to indicate that such records had not been destroyed as alleged.

Therefore, such a request belies the allegation made in the petition wherein the petitioner not only acknowledges that the documents were destroyed but actually alleges it.

The second area concerns whether the Clerk of the Supreme Court in fact requested non-record information. As with the first area, the Court finds such an inquiry irrelevant.

Arango claimed that the mere request of such information regardless of whether the Florida Supreme Court actually relied upon the non-record information creates the appearance of impropriety and that in capital cases where the petitioner's life is at stake, federal law guarantees petitioner a full and fair review of his death sentence free from even the appearance of impropriety. Arango contended that his fundamental right of due process of law was abridged because under the circumstances the availability to the Court of prejudicial material creates an appearance of impropriety thereby tainting the entire pool of defendants in Brown v. Wainwright and specifically him.

The Court finds that the above analysis defies logic. During the evidentiary hearing the following dates were proffered to the Court and accepted as accurate by Petitioner: on September 2, 1980, Arango filed his Notice of Appeal to the Florida Supreme Court on his direct appeal. The Court does not believe that the mere filing of that Notice of Appeal alerted the Justices of the Florida Supreme Court to the nature of that appeal. Twenty seven days later on September 29, 1980, the Petition for Writ of Habeas Corpus was filed in Brown v. Wainwright. On January 12, 1981, the Attorney General's office received the record on Arango's direct appeal and on or about that date, the Florida Supreme Court received it. Three days later on January 15, 1981, the Florida Supreme Court decided Brown v. Wainwright, 392 So.2d 1327 (1981).

As noted by the Eleventh Circuit in Ford v. Strickland, 696 F.2d 804 (1983), the Florida Supreme Court held in Brown that state law does not permit the use of non-record material in the appellate review of a capital sentence. Id. at 810. The Eleventh Circuit Court of Appeals then quoted the following passage from Brown:

> [A]s a matter of law our view of the non-record information petitioners have identified is totally irrelevant either to our appellate function in capital cases as it bears on the operation of the statute, or to the validity of any individual death sentence....

> \* \* \* \* \* \*

> The record of each proceeding, and precedent, necessarily frame our determinations in sentence review.... Factors or information outside the record play no part in our sentence review role.

Brown v. Wainwright, 392 So.2d at 1331–1332.

On March 3, 1981, Arango filed his appellate briefs in the direct appeal and the Attorney General of the State of Florida responded on May 18, 1981. Oral argument took place on August 31, 1981. The Florida

Supreme Court decided Arango's direct appeal on January 21, 1982, more than a year after the *Brown* decision.

At the time the Court considered Arango's appeal, the *Brown* case had already been decided. This Court must assume that the Florida State Supreme Court followed *Brown* and did not review non-record information in Arango's case. In this case, not only does it appear by virtue of the dates at issue that the material was not viewed in Arango, but there has been no indication that any non-record information existed as to Arango. The exhibit offered by Petitioner in evidence clearly states that none existed.

 This brings the Court to the issue of whether by merely requesting and receiving the information referred to in *Brown, supra,* relating to other defendants, an appearance of impropriety was created tainting the entire pool of defendants in *Brown v. Wainwright* and particularly the Petitioner in perpetuity.

In light of the statement in *Brown, supra,* that view of non-record information would be totally irrelevant to the Court's role in sentence review, and the further indication by the Florida Supreme Court that such information was used for some other purpose, *Brown v. Wainwright,* 392 So.2d 1327, 1333 n. 17 (1981), the Court cannot find any merit with this second contention.

As to the *Ford v. Strickland* issue (*Brown v. Wainwright* in the Florida Supreme Court), the following findings of fact and conclusions of law based on the record before this Court are made:

1. That, on September 29, 1980, the date of the original application for emergency relief and petition for habeas corpus which has come to be known as *Brown v. Wainwright* and in which the Petitioner was a named Petitioner represented by counsel, said application clearly reflected that whatever material is referred to in *Brown v. Wainwright* had in fact already been destroyed by the Clerk of the Supreme Court of Florida.

2. That none of the material regardless of when destroyed contained information pertaining to the Petitioner Arango.

3. That the first occasion that the Petitioner sought direct appellate review of his capital conviction in the Supreme Court of Florida was on September 2, 1980, only twenty seven days prior to the filing of the original application and petition for habeas corpus in *Brown v. Wainwright* (which the Court already notes contained an allegation by the Petitioner that the material complained of had already been destroyed).

4. That the record on the direct appeal of the Petitioner was filed with the Florida Supreme Court on or about January 12, 1981.

5. That on January 15, 1981, the Court issued its opinion in *Brown v. Wainwright* in which it is affirmatively stated by the Court that such material was not used as asserted in the original application and petition for writ of habeas corpus.

6. That Arango's appellate brief in the direct appeal was filed with the Court on March 3, 1981 and the State's response thereto on May 18, 1981.

7. That oral argument on Petitioner's direct appeal was on August 31, 1981 and the opinion and decision of the Florida Supreme Court affirming his capital conviction issued on January 21, 1982.

8. That the sole material offered at the evidentiary hearing was the exhibit of the *Brown v. Wainwright* proceeding and the date that each of the appellate functions occurred regarding the direct appeal which dates have been stipulated to by the parties as accurate. In addition, as alluded to earlier, the Petitioner requested the opportunity of deposing the Clerk of the Florida Supreme Court or his staff for the sole purpose of determining two issues: (1) whether or not in fact such material had been destroyed (this request was denied because it belies the very allegations of the petition in the original application in *Brown v. Wainwright, supra* ); and (2) whether or not any material had ever been requested by the Clerk pertaining to the Petitioner Arango although the record clearly reflects

that no such material was ever received (this the Court considered then and considers now insofar as this Court's determination to be immaterial).

9. Although this Court did not consider an evidentiary hearing essential to a determination of the issue framed in *Ford v. Strickland* (*Brown v. Wainwright*), in an abundance of caution, this Court granted such evidentiary hearing. Based upon the aforesaid findings of fact which are uncontradicted in the record, the reasons for denial of said relief on this ground are stronger than before.

10. That this Court takes judicial notice of the fact that the mere filing of a notice of appeal or a record on appeal absent a contrary showing, does not evidence any awareness or knowledge on the part of Justices of the Supreme Court of Florida as to the nature of the issues framed or the contents of said record on appeal prior to the same being presented by way of briefs or oral argument.

11. That the existence of said material as it pertains to the Petitioner and his direct appeal could have at best existed for a period of twenty seven days (September 29, 1980, date of original application; September 2, 1980, date of original notice of appeal on direct appeal).

12. That there is no evidence whatsoever to establish that whatever materials were before the Supreme Court of Florida in any form or fashion affected the decision of the Supreme Court of Florida in affirming the Petitioner's appeal one year and six days after the filing of their opinion in *Brown v. Wainwright* (January 15, 1981, *Brown v. Wainwright* opinion; January 21, 1982, affirmance opinion in direct appeal of Arango's conviction.)

13. This record is totally devoid of any facts of whatsoever kind or nature which would indicate that there was an appearance of impropriety as pertains to said Petitioner and the handling of his direct appeal by the Florida Supreme Court. This Court finds as a matter of fact and law that no such appearance existed nor was his direct appeal in any way tainted by the assertions and allegations made in the case of *Brown v. Wainwright.*

14. This Court specifically finds against the assertion by the Petitioner that there should be an inference drawn that since such material was in some form or fashion before the Supreme Court of Florida as pertains to other Defendants, that the Court should not only disregard the opinion of the Florida Supreme Court as pertains to such other defendants but in some way should draw the conclusion that this Petitioner on his direct appeal was deprived of due process of law in a full and fair consideration of his appeal by that Court. This Court does specifically find that the assertion made by said Court in their opinion in *Brown v. Wainwright* would certainly hold true and should be afforded due consideration by way of that Court subsequently deciding the appeal of an individual appellant over a year later in which no material of any kind pertaining to said petitioner was ever before said Court.[3]

Based upon the above and foregoing findings of fact and conclusions of law, the Court finds as a matter of law that the stay heretofore issued by Justice Powell of the United States Supreme Court on April 15, 1983 pertaining to the mandate in *Ford v. Strickland* has no application to the facts of this case and to the Petitioner herein.

## B. THE WITHERSPOON v. ILLINOIS, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), VIOLATION

■ Arango contends "that he was denied his right to a fair trial by an impartial

---

**3.** The Court notes that in *Booker v. Wainwright,* 703 F.2d 1251 (11th Cir.1983), the Eleventh Circuit Court of Appeals rejected Petitioner's contention that the Florida Supreme Court's solicitation of ex parte psychological material concerning Petitioner was unconstitutional. The Court *citing Ford v. Strickland,* 696 F.2d 804 (11th Cir.1983) (en banc) indicated that "Booker's attorney was furnished with the Florida Supreme Court's request of Booker's presentence investigation report, thus rendering this factual situation weaker than Ford." *Booker, supra,* at 1260. This Court notes that Arango's case appears even weaker than Booker's case, there being no indication that any nonrecord information whatsoever was furnished to the Florida Supreme Court.

jury drawn from a cross-section of the community when one of the venire members, Mr. Alvarez, was excused for cause in violation of the precepts of *Witherspoon v. Illinois,* 391 U.S. 510 [88 S.Ct. 1770, 20 L.Ed.2d 776] (1968)."

In *Witherspoon,* the Court held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. at 522, 88 S.Ct. at 1777.

In *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the Court discussed a line of cases that established the following general proposition:

> That a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.

*Id.* at 45, 100 S.Ct. at 2526.

Moreover, the law is clear that a state has the power to:

> [e]xecute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

*Darden v. Wainwright,* 699 F.2d 1031, 1037 (11th Cir.1983), *quoting Adams v. Texas,* 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), *quoting Witherspoon v.*

*Illinois,* 391 U.S. at 522–23, n. 21, 88 S.Ct. at 1777, n. 21 (1968).

In deciding this issue, the Court finds it necessary to examine the entire voir dire examination.[4] *Darden v. Wainwright,* 699 F.2d 1031, 1038 (11th Cir.1983). Based on this Court's review of the entire voir dire examination of Mr. Alvarez, it appeared that although Mr. Alvarez seemed unsure about what was being asked of him, the ultimate conclusion to be drawn from the examination is that his attitude toward the death penalty would interfere with his making an impartial decision as to Arango's guilt. Moreover, in this Court's opinion such a determination is "unmistakably clear", *Darden v. Wainwright,* 699 F.2d 1031, 1037 (11th Cir.1983), and therefore, Mr. Alvarez' ability to perform his duties as a juror were substantially impaired.

### C. JURY INSTRUCTIONS UNCONSTITUTIONALLY SHIFTED TO ARANGO THE BURDEN OF PROVING THAT THE MITIGATING CIRCUMSTANCES OUTWEIGHED THE AGGRAVATING CIRCUMSTANCES.

 Arango alleges as his third ground that "the instructions to the jury at the penalty phase unconstitutionally shifted to Mr. Arango the burden of proving that the mitigating circumstances outweighed the aggravating circumstances, thus violating his rights to due process of law and to be free from cruel and unusual punishment under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution."

Upon examining the entire instruction, the Court notes that the trial court gave the Florida Standard Jury instruction. Appendix A at 941–945. However, in addition to the Florida Standard Jury instruction, the trial court gave an additional instruction which made it clear that the jury must find that the aggravating circumstances outweigh the mitigating circumstances. Ap-

---

4. Mr. Alvarez' voir dire examination appears at Appendix A at 15–17, and again at 97–105.

**1189**

pendix A at 945–946.[5] Examining this instruction as a whole, the Court does not believe that the burden of proof was shifted to Arango in violation of his constitutional rights and so finds as a matter of fact and law.

### D.(1) THE TRIAL COURT ERRED IN ADMITTING TESTIMONY FROM THE MEDICAL EXAMINER ALLEGED TO BE HIGHLY IRRELEVANT, PREJUDICIAL AND INFLAMMATORY

■ As a fourth ground of the Petition for Habeas Corpus, Arango alleged that during the sentencing phase of the proceedings "highly irrelevant, prejudicial and inflammatory testimony from the Medical Examiner regarding his personal opinions of the feelings experienced by the dying victim" were presented to the jury. Petitioner asserts that the presentation of such testimony was violative of his right to a fair trial and to due process of law as provided in the Sixth and Fourteenth Amendments to the United States Constitution. Petitioner further claims that the imposition of the death sentence in light of the testimony of the Medical Examiner would be violative of his Eighth Amendment right against cruel and unusual punishment. The Court finds that this claim raised by Arango is not cognizable in a federal habeas corpus proceeding. Whether the Medical Examiner's testimony was "irrelevant, prejudicial and inflammatory" is a state evidentiary question and beyond the scope of review by Federal Court in considering the issue on a habeas petition. It is settled law that a Federal Court may not review the trial judge's action concerning the admission of evidence. *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1971); *Woods v. Estelle,* 547 F.2d 269 (5th Cir.1977); *Pleas v. Wainwright,* 441 F.2d 56 (5th Cir.1971). As the Supreme Court has stated:

We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence.... The fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason above, render its reception a violation of due process.

*Lisenba,* 314 U.S. at 228–9, 62 S.Ct. at 286.

■ The Fifth Circuit states that the mere violation of evidentiary rules does not itself invoke habeas review. The Court must examine the record only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause. In analyzing "fundamental fairness" the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is material in the sense of a crucial, critical and highly significant factor. *Woods v. Estelle,* 547 F.2d 269, 271 (5th Cir.1977).

■ The Court's examination of the record leads it to conclude that if any error was committed in the admission of the Medical Examiner's testimony, it was harmless. From a reading of the testimony presented at trial, it is clear that the Doctor's opinions were based on scientific analysis and any reference he made to his personal experiences served only to simplify his medical findings for the jury.

### D(2). THE TRIAL COURT'S INSTRUCTION OF "ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL" AGGRAVATING CIRCUMSTANCES WAS VAGUE, INCOMPLETE AND FAILED TO ADEQUATELY CHANNEL THE JURY'S DISCRETION

Additionally, as to ground four of the Petition, Arango charges that the trial court's instruction defining the terms "especially heinous, atrocious or cruel" was inadequate in that it was vague and incomplete and that the Petitioner's requested instructions were refused.

---

**5.** The entire instruction given by the trial court with regard to this aspect of the case appears at Appendix A at 941–947.

The record indicates that the trial Court instructed the jury on Section 921.141(5)(h), Florida Statutes (1982). The trial Court instructed the jury that "[h]einous means extremely wicked or shockingly evil. Atrocious means outrageous, wicked and vile [and] cruel means designed to inflict a high degree of pain; utter indifference to, or enjoyment of the suffering of others; pitiless." Appendix A at 943. This Section of the Statute was construed by the United States Supreme Court in *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1975). The Court said that:

> [W]hile it is arguable "that all killings are atrocious ... [s]till, we believe that the Legislature intended something 'especially' heinous, atrocious or cruel when it authorized the death penalty for first degree murder." *Tedder v. State,* 322 So.2d [908] at 910 [Fla.1975]. As a consequence, the court has indicated that the eighth statutory provision is directed only at "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon,* 283 So.2d [1] at 9 [Fla.1973]. *See also Alford v. State,* 307 So.2d 433, 445 ( [Fla.] 1975); *Halliwell v. State, supra,* [323 So.2d 557] at 561 [Fla.1975]. We cannot say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases.

*Id.* at 255–56, 96 S.Ct. at 2968.

Although Petitioner asserts that he requested a jury instruction as to the aggravating circumstance of "especially heinous, atrocious or cruel", Petitioner did not submit any such instructions to this Court as an exhibit, nor did any reference to the same in the trial transcript indicate that any instructions were actually requested by Arango as to what is heinous, atrocious or cruel.

■ This Court finds that in light of the trial court's defining each term individually and in light of *Proffitt,* the instruction was neither vague, incomplete nor inadequate.

**E. THE DEATH SENTENCE IMPOSED ON THE PETITIONER IS A CRUEL AND UNUSUAL PUNISHMENT AND IS "TOO GREAT"**

Arango asserts as a fifth ground of his Petition that the death sentence imposed upon him is a cruel and unusual punishment in light of all the relevant facts and it thereby contravenes the requirement of proportionality. Counsel for Petitioner requested of the Court an evidentiary hearing on the issue of whether the death penalty under Section 921.141, Florida Statutes (1982), is being applied arbitrarily and capriciously as well as disproportionately in violation of Petitioner's rights under the Eighth and Fourteenth Amendments. The Court finds that such an evidentiary hearing is wholly without merit in a federal habeas petition as the standard of review by this Court is merely to determine whether the trial court and the Florida Supreme Court performed their duty of sentencing Arango under Section 921.141 with care and concern. *Spinkellink v. Wainwright,* 578 F.2d 582, 606 (5th Cir.1978). The record supports a finding that the trial court found the existence of an aggravating circumstance that the crime was "especially heinous, atrocious or cruel", Section 921.-141(5)(h), Florida Statutes (1982), Appendix A at 952–3, Appendix B at 149–150, so as to merit the penalty of death. Although the trial court found one of the statutory mitigating circumstances, Arango's lack of prior criminal activity, Section 921.141(6)(a), Florida Statutes (1982), the record establishes that this single circumstance was outweighed by the aggravating circumstance within the meaning of the statute. Appendix A at 951–953 and Appendix B at 149–150. In weighing aggravating and mitigating circumstances the Florida Supreme Court has repeatedly stated that the death penalty statute does not contemplate a mere tabulation of aggravating versus mitigating circumstances to arrive at a net sum. Instead, it places on the judge the task of weighing all the factors to determine whether the death sentence is appropriate. *Arango v. State,* 411 So.2d 172 (Fla.1982);

*White v. State,* 403 So.2d 331 (Fla.1981); *Hargrave v. State,* 366 So.2d 1 (Fla.1978).

The Florida death penalty statute has been held constitutional in that it outlines standards in the form of aggravating and mitigating circumstances concerning the nature of the crime, as well as the nature of the criminal, which judges and juries are to follow in exercising their discretion as to which convicted murderers are to die for their crimes and which are to receive life sentences. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1975); *see also State v. Dixon,* 283 So.2d 1 (Fla.1973), *cert. denied,* 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974) (Section 921.141 held constitutional by Florida Supreme Court). In *Proffitt,* the Supreme Court said:

> [I]n Florida ... it is no longer true that there is "no meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not." [And therefore], [o]n its face the Florida system thus satisfies the constitutional deficiencies identified in *Furman v. Georgia,* 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972).

*Proffitt v. Florida,* 428 U.S. at 253, 96 S.Ct. at 2967.

The Fifth and Eleventh Circuits state that the federal courts' inquiry of a state court's sentencing procedure need not and should not entail a case-by-case comparison of the facts in a given case with the decisions of the state court in other death penalty cases. *Spinkellink v. Wainwright,* 578 F.2d at 606; *Ford v. Strickland,* 696 F.2d at 819. To provide otherwise, would allow a federal court to quarrel with the state court on its interpretation of the state's statutes. Petitioner has shown no basis for this Court to conclude that the Florida Supreme Court has failed to discharge its statutory duties responsibly and, therefore, this Court finds that the state courts acted through a properly drawn statute with appropriate standards to guide discretion and such discretion was accomplished with care and concern.

## F. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE AT TRIAL WHICH HAD BEEN OBTAINED AS THE RESULT OF AN UNLAWFUL, WARRANTLESS ENTRY INTO PETITIONER'S APARTMENT

Petitioner's final assertion is that the search of his apartment and the seizure of evidence therein by the arresting police officers violated his Fourth Amendment rights.

In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court limited the scope of federal court review of such a Fourth Amendment issue on a habeas corpus petition filed by a state prisoner. The inquiry before this Court is limited to a finding of whether or not Arango was afforded an opportunity to fully and fairly litigate his claim in state court. *Id.* at 494, 96 S.Ct. at 3052. Counsel for Petitioner has represented to this Court, and the record indicates, that this identical issue was fully and fairly litigated during the state proceeding in a motion to suppress hearing by the Florida Supreme Court and affirmance of that ruling. Appendix A at 365–401. Given this representation and mindful of the dictates of the *Stone* case, the Court inquired of Arango's counsel why he should not be precluded from raising the issue before this Court. Counsel responded that the rule of *Stone v. Powell* could be circumvented upon a finding of exigent circumstances or fundamental error.

The Court has been directed to no authority to support this contention. However, in this Court's opinion, no circumstances exist here to warrant circumventing the dictates of *Stone* and no fundamental error exists.

Based upon the above and foregoing and the Court's determination adverse to the Petitioner's position as set forth in this Memorandum Opinion, it is ORDERED AND ADJUDGED as follows:

1. That this Court has jurisdiction over the parties and the subject matter as pertains to the issues heretofore referred to in this Court's Opinion on the grounds that as to each of said issues the Petitioner has exhausted his state remedies.

2. That this Court finds as a matter of law that as to each of the grounds asserted for the issuance of this Court's "Great Writ of Habeas Corpus" that the same are without merit based upon this Memorandum Opinion which this Court will treat in its entirety as this Court's findings of fact and conclusions of law.

3. That the Petition for issuance of this Court's "Great Writ of Habeas Corpus" be and the same is hereby DENIED and this cause be and the same is hereby dismissed with prejudice.

4. That in view of the notification to this Court by the Honorable Sid White, Clerk of the Supreme Court of Florida, that that Court has issued a stay of execution staying the Governor's warrant for imposition of the death penalty as pertains to the Petitioner issued April 6, 1983, the requested stay of execution is now moot; however, based solely on the record before it and the issues presented as set forth in this Memorandum Opinion this Court would not issue a stay of execution.